IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 17, 2006 Session

**DIANE V. VANNUCCI, Individually, and as Executrix of the Estate of Julie Vannucci Barney, Deceased, ET AL. v. MEMPHIS OBSTETRICS AND GYNECOLOGICAL ASSOCIATION, P.C., ET AL.**
**AND**
**DIANE V. VANNUCCI, Individually, and as Executrix of the Estate of Julie Vannucci Barney, Deceased and DIANE V. VANNUCCI for the use and benefit of the heirs at law of Julie Vannucci Barney, Dec'd., and DIANE V. VANNUCCI, for the use and benefit of ROBERT ALLEN BARNEY, III, A Minor v. W. B. MOSS, INDIVIDUALLY, and W. B. MOSS, M.D., P.C.**

Interlocutory Appeal from the Circuit Court for Shelby County
Nos. 303685-3 T.D. & CT-00702200      Karen R. Williams, Judge

———

**No. W2005-00725-COA-R3-CV - Filed July 11, 2006**

———

Following the untimely diagnosis of her cervical cancer, the plaintiff filed a medical malpractice suit against several doctors and the laboratory that interpreted her test results. In addition to her individual suit, the plaintiff sued on behalf of her minor son for loss of consortium. Shortly after filing the lawsuit, the plaintiff died. The executrix of her estate was substituted as a plaintiff in the case. Some of the named defendants sought to enter into a settlement with the minor, who was the only beneficiary of any proceeds to be derived from the suit. Pursuant to section 34-1-121 of the Tennessee Code, the settling parties petitioned the trial court to approve the settlement. At the hearing, the trial court excluded the non-settling defendants from participating in the hearing. The trial court subsequently entered an order approving the settlement, but the court sealed the contents of the settlement. Thereafter, the non-settling defendants moved the trial court judge to recuse herself, arguing that she could no longer impartially preside over the remainder of the case by virtue of having heard disputed facts during the ex parte settlement hearing. When the trial court denied their motion, the non-settling defendants applied for and received the trial court's permission to seek an interlocutory appeal to this Court. We decided to grant the non-settling defendants' application for an interlocutory appeal to address the narrow issue of whether the trial court erred when it denied the motion to recuse. After reviewing the record, we affirm the trial court's decision to deny the Appellants' motion for recusal.

**Tenn. R. App. P. 9; Interlocutory Appeal; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Teresa J. Sigmon, Claire M. Cissell, William D. Domico, W. Bradley Gilmer, Memphis, TN, for Appellants

**OPINION**

**I.**
**FACTUAL BACKGROUND & PROCEDURAL HISTORY**

On August 11, 1999, Julie Barney ("Barney") filed a medical malpractice lawsuit on her own behalf against Memphis Pathology Laboratories, Inc.; Health Tech Affiliates, Inc.; W.B. Moss, M.D.; W.B. Moss, M.D., P.C.; Suzanne Harrison, individually; Suzanne Harrison, P.C.; Laura Skinner, individually; Laura Skinner, P.C.; Memphis Obstetrics and Gynecological Association, P.C.; John Gayden, M.D.; John Gayden, M.D., P.C.; Peter Ballenger, M.D.; and Peter Ballenger, M.D., P.C. (hereinafter collectively referred to as the "Defendants") in the Circuit Court of Shelby County. Barney alleged therein that the Defendants failed to properly interpret her laboratory test, which in turn led to the untimely detection of her cervical cancer. In addition to her individual claim, Barney asserted a cause of action on behalf of her minor son for loss of consortium.

On August 12, 1999, Barney died as a result of the cancer. Thereafter, the trial court permitted Diane V. Vannucci ("Vannucci" or "Appellee"), the executrix of Barney's estate, to be substituted as a plaintiff in the case. At the time of her death, Barney and the child's father were divorced. Following his mother's death, the child went to live with his father in Mississippi.

In December of 1999, Vannucci voluntarily nonsuited her claims against Dr. W.B. Moss and his medical practice with prejudice. Vannucci, however, subsequently filed an amended complaint naming Dr. Moss and his medical practice as defendants once more. The trial court subsequently entered an order citing the previous order allowing Vannucci to voluntarily nonsuit her claims against Dr. Moss and his practice and held that she erroneously included Dr. Moss and his practice as defendants in the amended complaint. On December 1, 2000, Vannucci filed a separate lawsuit against Dr. Moss and his practice in the Circuit Court of Shelby County. The circuit court subsequently entered a consent order consolidating the cases.

Vannucci, pursuant to Rule 31 of the Rules of the Supreme Court of Tennessee,[1] requested and obtained the trial court's permission to pursue mediation. In September of 2004, following mediation, Vannucci entered into settlement negotiations with Memphis Pathology Laboratories, Inc., Health Tech Affiliates, Inc., Suzanne Harrison and her practice, and Laura Skinner and her practice (hereinafter referred to as the "Settling Defendants"). On October 21, 2004, Vannucci, the minor's father, and the Settling Defendants filed a joint petition asking the trial court, pursuant to section 34-1-121 of the Tennessee Code,[2] to approve their settlement agreement. In their petition, the parties asked that the settlement "be kept confidential and kept under seal not to be opened except on further orders of this Court."

When counsel for Dr. Moss learned of the proposed compromise, she faxed a letter to counsel for the Settling Defendants and Vannucci inquiring as to when the petition would be heard by the trial court. On October 27, 2004, counsel for Dr. Moss received a telephone call from counsel for the Settling Defendants informing her that the settlement hearing would be confidential, therefore, they could not attend. Counsel for Dr. Moss then contacted counsel for Memphis Obstetrics and Gynecological Association, P.C., Dr. Gayden, and Dr. Ballenger (hereinafter referred to, along with Dr. Moss, as the "Non-Settling Defendants" or "Appellants") and informed them of the hearing. On October 28, 2004, counsel for all parties, including the Non-Settling Defendants, appeared at the hearing.

Before the hearing got underway, counsel for Vannucci made an oral motion to Judge Karen R. Williams asking that she exclude counsel for the Non-Settling Defendants from the proceedings. In making this request, counsel for Vannucci noted that the Non-Settling Defendants failed to reach a compromise with the minor during mediation. While discussing the motion with counsel, Judge Williams indicated that Vannucci had submitted various documents regarding the Settling

---

[1] Rule 31 of the Rules of the Supreme Court of Tennessee governs Alternative Dispute Resolution. TENN. SUP. CT. R. 31 (2005). Alternative Dispute Resolution may be sought in "all civil actions except forfeitures of seized property, civil commitments, adoption proceedings, and habeas corpus and extraordinary writs." *Id.* § 2(d). "Upon motion of either party, or upon its own motion, a Court, by Order of Reference, may order the parties to an Eligible Civil Action to participate in a Judicial Settlement Conference, Mediation, or Case Evaluation." *Id.* § 3(b).

[2] As the minor child was the sole beneficiary of any proceeds recovered from the lawsuit, the aforementioned statute applies. This statute provides, in relevant part, as follows:

> In any action, claim, or suit in which a minor or disabled person is a party or in any case of personal injury to a minor or disabled person caused by the alleged wrongful act of another, the court in which the action, claim, or suit is pending, or the court supervising the fiduciary relationship if a fiduciary has been appointed, has the power to approve and confirm a compromise of the matters in controversy on behalf of the minor or disabled person. If the court deems the compromise to be in the best interest of the minor or disabled person, any order or decree approving and confirming the compromise shall be binding on the minor or disabled person.

TENN. CODE ANN. § 34-1-121(b) (2001).

Defendants' proposed compromise with the minor, which counsel for the Non-Settling Defendants never received. Judge Williams subsequently entered an order on the oral motion, stating:

> The court is of the opinion that the Motion to Exclude Counsel for Defendant, W.B. Moss, and Counsel for the gyn defendants is well taken and is granted. The hearing shall be conducted in chambers to the exclusion of Counsel for Defendant, W.B. Moss, and Counsel for the gyn defendants.
>
> Whereupon, Counsel for Defendant, Moss, made a motion for a two week continuance of the hearing to address the Court of Appeals about their right to attend the hearing. Whereupon, the Court denied said Motion for continuance. In addition, Dr. Moss' motion to be provided copies of the pleadings and submissions made to the court in connection with the minor's settlement was denied. The court is of the opinion that Defendant, Moss, and the gyn defendants are not entitled to access to said documents.

Counsel for Dr. Moss also requested that the trial court allow the Non-Settling Defendants to attend the hearing but order the amount of the settlement withheld, which the trial court apparently denied as well.

Judge Williams then proceeded to hold a hearing on the petition. Judge Williams indicated in subsequent orders that she requested the presence of a court reporter at the hearing to preserve the proceedings for appellate review. She further indicated that counsel for the parties present at the hearing did not recall a court reporter being in attendance. Judge Williams stated in her subsequent orders, however, that she and her court clerk recalled a court reporter "setting up" in her chambers on the day of the hearing. In any event, the record on appeal is devoid of any transcript of the hearing.

On October 28, 2004, Judge Williams entered an order approving the settlement of the claims filed against the Settling Defendants, stating:

> This cause came to be heard upon the joint petition . . . for the approval of the final settlement of any and all claims of the minor . . . upon the duly executed Settlement Agreement and Release that was presented to the Court, the testimony in open court of the plaintiff Diane V. Vannucci and the [father], the report and testimony of the Guardian Ad Litem, statements of counsel for the respective parties, and the entire record, from all of which the Court finds as follows:
>
> . . . .

The Court finds that the final settlement and its terms as set forth in the Settlement Agreement and Release are fair and reasonable and in the best interest of the minor petitioner . . . , that the settlement should be approved, ratified and confirmed, that the settlement and its terms are confidential and should be kept confidential, and that the [Settling Defendants] should be dismissed from this case with prejudice.

Thereafter, the Non-Settling Defendants filed their written motions asking Judge Williams to recuse herself from the trial of the claims filed against them.[3]

Judge Williams subsequently denied the Non-Settling Defendants' motions to recuse. Thereafter, the Non-Settling Defendants filed a request for an interlocutory appeal, which the trial court granted on March 14, 2005. After entering the initial order granting the Non-Settling Defendants an interlocutory appeal, Judge Williams amended her order twice, with the last order entered on the subject stating:

The Court granted the Motion for an Interlocutory appeal because this is a matter of first impression for which there is a need for a uniform rule of law. Further, if the challenged Order is reversed, there would be needless, expensive and protracted litigation because the case would need to be tried a second time.

. . . .

The Trial Court reasoned that, if a non-minor settled with one or more Defendants, an Order dismissing that Defendant would be entered and the remaining Defendants would not be privy to the dollar amount of the settlement. In this instance, the settling plaintiff is a minor and therefore the Court must approve any settlement. The fact of the settlement and the amount thereof neither increases nor decreases the share of fault the Jury may allot to the remaining Defendants in the event the matter goes to trial. The settlement does not change the list of persons to whom the Jury may assign fault. Plaintiffs bear all the risk that the Jury may apportion fault differently and their judgment will be lessened thereby.

---

[3] Dr. Moss filed his motion to recuse on November 16, 2004. Dr. Gayden and Memphis Obstetrics and Gynecological Association, P.C., filed their motion to recuse on November 29, 2004.

This Court subsequently granted the Non-Settling Defendants' request for an interlocutory appeal to address the single issue of whether the trial court erred in denying the Appellants' motion to recuse.[4]

On October 13, 2005, Judge Williams supplemented the record with a "Statement of the Evidence by the Court," which recounted the aforementioned procedural history and the basis for her ruling to exclude the Non-Settling Defendants from the settlement hearing and further provided:

> During the settlement hearing everyone carefully avoided any discussion of the non-settling defendants. All attention was focused on the terms of the settlement and whether Plaintiffs understood the risks they were taking by agreeing to a partial settlement when the jury later could apportion fault in a way that was detrimental to them.
>
> Having heard the statements of Plaintiff's counsel, the counsel for the settling defendants, the report of the Guardian ad Litem and the responses of the Father of the minor to questions regarding his understanding of the ramifications of the settlement, the Court approved the settlement.

When Vannucci failed to file a brief in this Court setting forth her position on appeal, we entered an order directing her to show cause why the case should not be submitted on the record, the Appellants' brief, and the Appellants' oral argument. When Vannucci failed to respond, we entered an order directing that the case be submitted for a decision based on the record before the Court, the Appellants' brief, and the Appellants' oral argument. When counsel for Vannucci appeared at oral argument, the Court did not allow him to argue his client's position regarding the recusal issue before this Court.

## II.
### STANDARD OF REVIEW

Interlocutory appeals are governed by Tennessee Rule of Appellate Procedure 9, which provides that "an appeal by permission may be taken from an interlocutory order of a trial court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals only upon application and in the discretion of the trial and appellate court." TENN. R. APP. P. 9(a) (2005). The party seeking an interlocutory appeal may, within thirty (30) days after the entry of the interlocutory order complained of, file a motion with the trial court requesting permission to take an interlocutory appeal. *Id.* § 9(b). Should the trial court decide to grant the motion and set forth its reasons for doing so in a written opinion, this Court may, in its discretion, allow the appeal to proceed. *Id.*

---

[4] The trial court's orders granting the Non-Settling Defendants an interlocutory appeal do not reference Dr. Ballenger, and it does not appear as though he has appealed the trial court's decision in this case. Furthermore, the record does not contain any indication as to whether Dr. Ballenger continues to be a defendant in this litigation.

Interlocutory appeals generally are not favored because our appellate courts promote finality in the case over piecemeal appellate review. *State v. Hawk*, 170 S.W.3d 547, 554 (Tenn. 2005) (citing *United States v. MacDonald*, 435 U.S. 850, 853, 857 (1978)). In deciding whether to grant an application for an interlocutory appeal, we are mindful of the following:

> In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the court's discretion, indicate the character of the reasons that will be considered: (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability of that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment.

TENN. R. APP. P. 9(a) (2005). "A motion for recusal based upon the alleged bias or prejudice of the trial judge addresses itself to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record." *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995) (citing *State ex rel. Phillips v. Henderson*, 423 S.W.2d 489, 492 (Tenn. 1968)).

## III.
### DISCUSSION

It is a fundamental principle of law that litigants are entitled to a fair trial before an impartial judge. *In re Cameron*, 151 S.W. 64, 76 (Tenn. 1912); *Reynolds v. Chumbley*, 135 S.W.2d 939, 940 (Tenn. 1940). It is a denial of justice to force a litigant to "try his case before a judge who has already decided it, and has announced that decision in advance of the hearing." *In re Cameron*, 151 S.W. at 76–77. "It, therefore, goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998); *Alley v. State*, 882 S.W.2d 810, 819–20 (Tenn. Crim. App. 1994). Moreover, public confidence in the judiciary would be eroded if litigants were forced to have their cases heard by someone other than an impartial fact-finder. *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001); *Alley*, 882 S.W.2d at 820. "It is only when the people are satisfied that impartial judges decide their controversies, that they entertain feelings of reverence for the judgments of the courts of the land." *In re Cameron*, 151 S.W. at 76.

The principle of judicial neutrality is embodied in the Tennessee Constitution, the Code of Judicial Conduct, and our statutory law. The Tennessee Constitution provides:

> No judge of the Supreme or Inferior Courts shall preside on the trial of any case in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any Inferior Court, except by consent of all the parties. In case all or any of the judges of the Supreme Court shall thus be disqualified from presiding on the trial of any cause or causes, the court or the judges thereof, shall certify the same to the governor of the state, and he shall forthwith specially commission the requisite number of men, of law knowledge, for the trial and determination thereof. The Legislature may by general laws make provision that special judges may be appointed, to hold any courts the judge of which shall be unable or fail to attend or sit; or to hear any cause in which the judge may be incompetent.

TENN. CONST. art. 6, § 11. "The purpose of Article 6, sec. 11 of our Constitution is to insure every litigant the cold neutrality of an impartial court." *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967); *see also In re Cameron*, 151 S.W. 64, 76 (Tenn. 1912).

The Code of Judicial Conduct provides that "[a]n independent and honorable judiciary is indispensable to justice in our society." TENN. S. CT. R. 10, Canon 1 (2005). In furtherance of this objective, the judiciary must "comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." *Id.*, Canon 2(A). "A judge must avoid all impropriety and appearance of impropriety." *Id.*, Canonf 2(A) cmt. Further, "[a] judge shall perform judicial duties without bias or prejudice," *Id.*, Canon 3(B)(5), and "must perform judicial duties impartially and fairly," *Id.*, Canon 3(B)(5) cmt.

To protect the impartiality of the judiciary, the legislature directs that a judge is not competent to hear the following matters:

> No judge or chancellor shall be competent, except by consent of all parties, to sit in the following cases:
> (1) Where the judge or chancellor is interested in the event of any cause;
> (2) Connected with either party, by affinity or consanguinity, within the sixth degree, computing by the civil law;
> (3) Has been of counsel in the cause;
> (4) Has presided on the trial in an inferior court; or

(5) In criminal cases for felony, where the person upon whom, or upon whose property, the felony has been committed, is connected with the judge or chancellor by affinity or consanguinity within the sixth degree, computing by the civil law.

TENN. CODE ANN. § 17-2-101 (1994).

In the instant case, the Non-Settling Defendants asked Judge Williams to recuse herself from the remainder of the case, which she refused to do. A recusal motion "must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted); *see also Davis v. Tenn. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. 2000) ("Parties may lose the right to question a judge's impartiality if they attempt to manipulate the impartiality issue to gain procedural advantage."); *In re Cameron*, 151 S.W. 64, 78 (Tenn. 1912) ("And, generally, if the facts are known to the party recusing, he is bound to make his objections before issue joined, and before the trial is commenced; otherwise he will be deemed to have waived the objection in cases where the statute does not make the proceedings void."). It is undisputed that the Non-Settling Defendants raised the recusal issue with Judge Williams in a timely manner, as the issue is before this Court in the form of an interlocutory appeal.

In examining whether Judge Williams' decision constituted an abuse of discretion, we are mindful of the following:

> When a motion to recuse is made, a judge should grant the motion whenever his or her "impartiality might reasonably be questioned." Tennessee, like many jurisdictions, employs an objective rather than a subjective standard. Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.

*Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) (citations omitted); *see also Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001) ("Hence, the test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias."); *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) ("[I]nstead of making this decision based on subjective notions of his or her impartiality, a judge must be more objective and must ask what a reasonable, disinterested person knowing all the relevant facts would think about his or her impartiality."). Thus, "because perception is also important, a party does not have to prove actual bias or prejudice." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998).

In the case before us, section 34-1-121(b) of the Tennessee Code required Judge Williams to approve the compromise between the minor and the Settling Defendants by determining whether such compromise would be in the minor's best interest. The Non-Settling Defendants argue that, since this case involves multiple defendants and comparative fault principles are applicable, Judge Williams necessarily had to view the case in its entirety in order to comply with the statute. Stated differently, they contend that she was required to ascertain, albeit informally, the respective share of fault of each defendant in order to ascertain whether the compromise with the Settling Defendants was reasonable. In doing so, they assert that Judge Williams had to consider certain facts. The Non-Settling Defendants argue that, had they been allowed to attend the hearing, they would have been able to interject and point out that certain facts remained in dispute and present an outline of the proof they intended to offer at trial. They contend that Judge Williams did not have an objective presentation of the facts in the case and had to prejudge certain facts in order to comply with the statute, therefore, she no longer can remain impartial. Accordingly, the Non-Settling Defendants ask this court to find that Judge Williams abused her discretion in denying their motion for recusal and ask this Court to remand the remainder of the case for a trial before another judge.[5]

The Non-Settling Defendants readily note the absence of any Tennessee case squarely addressing this issue, and our independent research has likewise failed to find any controlling authority to guide our decision in this case. The Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned," including when "the judge has a personal bias or prejudice concerning a party or a party's lawyer, *or personal knowledge of disputed evidentiary facts concerning the proceeding*." TENN. S. CT. R. 10, Canon 3(E)(1)(a) (2005) (emphasis added). The following offers some guidance for assessing a trial court's knowledge of disputed facts: "The law is clear that the court must generally restrain itself to consideration of those facts that are before it and may not conduct an independent investigation." *Minor v. State*, No. M2001-00545-CCA-R10-PC, 2001 Tenn. Crim. App. LEXIS 932, at *34–35 (Tenn. Crim. App. Dec. 5, 2001) (citing TENN. S. CT. R. 10, Canon 3(B)(7)(e) cmt.); *see also State v. Ray*, 984 S.W.2d 239, 240 (Tenn. Crim. App. 1998). Further,

---

[5] As we previously noted, no transcript of the hearing to approve the settlement with the minor is contained in the record before this Court. "Parties who challenge a judge's impartiality must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned." *Davis v. Tenn. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 2000) (citations omitted). Ordinarily, we would be inclined to hold that many of the assertions put forth by the Non-Settling Defendants would constitute nothing more than mere conjecture. In this case, however, while it is impossible to know the depth with which Judge Williams reviewed the evidence in this case, the assertions by the Non-Settling Defendants concerning the actions of Judge Williams at the hearing are somewhat well-founded.

First, the statute, by its very nature, required Judge Williams to do more than merely approve a compromise negotiated by the parties. Next, without a record of the proceeding at issue, we must presume that Judge Williams complied with the applicable statute. *See Yeubanks v. Methodist Healthcare Memphis Hosps.*, No. W2003-01838-COA-R3-CV, 2004 Tenn. App. LEXIS 808, at *10–11 (Tenn. Ct. App. Nov. 18, 2004); *Scarbrough v. Scarbrough*, 752 S.W.2d 94, 97 (Tenn. Ct. App. 1988). Third, we are cognizant of the fact that a party excluded from the hearing and without the benefit of a transcript of that hearing will never have direct proof of impartiality. Finally, in her order approving the settlement and her subsequent statement of the evidence, Judge Williams referenced the fact that she entertained testimony in open court, reviewed the report of the Guardian ad Litem, and entertained the arguments of counsel.

"[b]ias or prejudice in the disqualifying sense must stem from an extrajudicial source and not from what the judge hears or sees during the trial." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998) (citing *Alley v. State*, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994)).

Even if we were to assume, for purposes of this appeal, that Judge Williams entertained various facts at the hearing and informally examined the comparative fault of the parties, including that of the Non-Settling Defendants, we cannot agree that such action would warrant a recusal under the unique facts of this case. There is nothing in the record to indicate that Judge Williams has made comments expressing her intention to rule for or against the Non-Settling Defendants at trial. *See Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 n.3 (Tenn. 2001) ("Among other ways, bias or prejudice warranting recusal may be shown where the trial judge expresses an opinion on the merits of a case prior to hearing any evidence, makes comments suggesting the judge has taken a position favorable or unfavorable to a party, or makes remarks indicating that the judge has prejudged factual issues."); *Leighton v. Henderson*, 414 S.W.2d 419, 420 (Tenn. 1967) ("In the trial of any lawsuit the judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial."). It is only when the trial judge makes statements indicating that he or she has prejudged the factual issues that our courts ordinarily will require disqualification. *Alley v. State*, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994).

Moreover, the Non-Settling Defendants have overlooked an important aspect of this case. The Tennessee Rules of Civil Procedure provide that "[t]he right of trial by jury as declared by the Constitution or existing laws of the State of Tennessee shall be preserved to the parties inviolate." TENN. R. CIV. P. 38.01 (2005). "Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 . . . ." TENN. R. CIV. P. 38.02 (2005). "Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court . . . ." TENN. R. CIV. P. 39.02 (2005). In her amended complaint, Vannucci expressly demanded a jury to try the allegations contained therein. Thus, it is a jury, and not Judge Williams, who will decide the issues of fact should the remainder of the case proceed to trial.

At oral argument, counsel for the Non-Settling Defendants suggested that Judge Williams still must enter rulings on evidentiary and other matters during the trial. Our appellate courts previously have noted, however, that a trial court's assessment of a witness's credibility at trial, *Davis*, 38 S.W.3d at 565, the fact that the trial judge made findings in a previous case involving the same party, *State ex rel. Phillips v. Henderson*, 423 S.W.2d 489, 492 (Tenn. 1968); *State v. Harris*, 947 S.W.2d 156, 172 (Tenn. Crim. App. 1996), or the fact that the trial judge entered adverse rulings against a party, *Herrera v. Herrera*, 944 S.W.2d 379, 392 (Tenn. Ct. App. 1996), cannot, in and of themselves, serve as the basis for recusal. "If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994); *see also Eldridge v. Eldridge*, 137 S.W.3d 1, 7 (Tenn. Ct. App. 2002). Adverse rulings by a trial court, even if erroneous as a matter of law, generally are not sufficient grounds to establish the need for recusal. *Alley*, 882 S.W.2d at 821. "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the [impartiality]

issue for strategic advantage, which the courts frown upon." *Davis*, 38 S.W.3d at 565. We are not prepared at this early stage of the litigation to presuppose how Judge Williams will choose to address any motions or evidentiary objections that may arise at trial.

The Non-Settling Defendants have offered two additional arguments as to why Judge Williams abused her discretion in failing to recuse herself in this case. First, they assert that ex parte communications are not permitted in litigation. The Tennessee Rules of Professional Responsibility provide that "[a] lawyer shall not . . . communicate *ex parte* with a judge, juror, or a member of the jury pool, prior to or during a proceeding, except as permitted by law." TENN. S. CT. R. 8, RPC 3.5 (2005). The comment to this rule provides that it "does not prohibit a lawyer from communicating with a judge on the merits of the cause in writing if the lawyer promptly delivers a copy of the writing to opposing counsel and to parties who are not represented by counsel." *Id.*, RPC 3.5 cmt. (2). "Oral communication is permitted upon adequate notice to opposing counsel and parties who are not represented by counsel." *Id.* Further, the Code of Judicial Conduct provides:

> A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . .

TENN. S. CT. R. 10, Canon 3(B)(7) (2005). With the exception of those instances outlined in the rule, which are not applicable here, "a judge must discourage ex parte communication and allow it only if all the criteria stated in Section 3B(7) are clearly met." *Id.*, Canon 3(B)(7) cmt. The Non-Settling Defendants assert that, since they were not provided with a copy of the documents disclosed to Judge Williams at the hearing and a hearing conducted pursuant to the statute at issue is not one of the recognized exceptions set forth in Canon 3(B)(7) of the Code of Judicial Conduct, their argument in favor of recusal is bolstered even further.[6]

Next, the Non-Settling Defendants argue that, pursuant to Tennessee Supreme Court Rule 31 governing Alternative Dispute Resolution, a trial judge, in an effort to ensure impartiality, cannot

---

[6] We limited the issue in this interlocutory appeal to whether the trial court erred in denying the Appellants' motion for recusal. Thus, we must limit the Appellants' argument in this regard to whether the alleged ex parte proceeding bears on the issue of recusal. We are not asked to decide whether the Non-Settling Defendants are entitled to the documents presented to the trial court at the hearing or the disclosure of the terms of the settlement. Furthermore, we are not asked to decide if non-settling tortfeasors are entitled to attend a judicial hearing convened pursuant to section 34-1-121 of the Tennessee Code to approve a settlement between settling tortfeasors and a minor. As such, the Non-Settling Defendants do not ask that we set aside the compromise entered into between the minor and the Settling Defendants.

-12-

preside over the mediation and the trial of the matter.[7]  They contend that the present case is analogous to the mediation setting, and they point to the fact that counsel for Vannucci told Judge Williams prior to the hearing that the Non-Settling Defendants failed to settle the case at the prior mediation when urging her to exclude them from the hearing.  In support of this position on appeal, the Non-Settling Defendants direct our attention to our decision in *Team Design v. Gottlieb*, 104 S.W.3d 512 (Tenn. Ct. App. 2002).  *Team Design* involved "a dispute over payment for artwork and graphic design for a country music album."  *Id.* at 515.  The trial court entered an order, pursuant to the parties' agreement, directing that the parties undergo "binding arbitration."  *Id.*  The trial court then conducted off-the-record discussions with each of the parties and subsequently entered an order adjudicating their claims.  *Id.*  After setting forth the history of Tennessee Supreme Court Rule 31 and its purpose, this Court held that the "binding mediation" ordered in that case did not comply with Rule 31.  *Id.* at 524.  In so holding, we noted that "the parties' decision-making rights were supplanted by the trial court, and there was no apparent effort to assist the parties in reaching their own voluntary settlement of their differences."  *Id.*  Further, "the proceeding was conducted by the trial judge to whom the case had been assigned notwithstanding the clear requirement in [Rule 31]."  *Id.*

We find both arguments espoused by the Non-Settling Defendants to be without merit. While the trial court did order the parties, pursuant to Vannucci's request, to undergo mediation, that process resulted in only some of the defendants agreeing to settle with the minor.  It is important to note that the Non-Settling Defendants do not argue that the mediation sanctioned by Tennessee Supreme Court Rule 31 and ordered in this case was performed improperly as was argued in *Team Design*.

"The resolution of disputes by agreement of the parties is to be encouraged."  *Harbour v. Brown*, 732 S.W.2d 598, 599 (Tenn. 1987); *see also Third Nat'l Bank v. Scribner*, 370 S.W.2d 482, 487 (Tenn. 1963) ("The policy of the law is to favor compromise."); 15A C.J.S. *Compromise & Settlement* § 1 (2002) ("The settlement of cases serves the dual and valuable purposes of reducing the strain on scarce judicial resources and preventing the parties from incurring significant litigation costs.").  "Court approval of a settlement is generally not required, and parties routinely settle litigation without court involvement."  *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 n.9 (Tenn. Ct. App. 2000).  As we stated in *Team Design*:

> Public policy strongly favors resolving disputes between private parties by agreement.  Private parties may, of course, decide to submit their disputes to the courts for resolution; however, a broad range of other formal and informal alternatives are available before they resort to litigation.  These procedures are, as a practical matter,

---

[7] "Mediation" is defined as "an informal process in which *a neutral person* conducts discussions among the disputing parties designed to enable them to reach a mutually acceptable agreement among themselves on all or any part of the issues in dispute."  TENN. S. CT. R. 31, § 2(f) (2005) (emphasis added).  "Rule 31 Neutrals shall . . . [m]aintain impartiality toward all parties . . . [which] means freedom from favoritism or bias in favor of or against any party, issue, or cause."  *Id.*, § 10(b)(2).

limited only by the parties' imaginations because the parties themselves may agree on virtually any mutually satisfactory procedure that is not illegal or contrary to public policy.

*Team Design*, 104 S.W.3d at 517.

Courts are empowered to adjudicate disputes and administer remedies, not to make contracts for the parties in the form of a compromise. "A compromise and settlement agreement is merely a contract between parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law." *Envtl. Abatement, Inc.*, 27 S.W.3d at 539 (citing *Sweeten v. Trade Envelopes*, 938 S.W.2d 383, 385 (Tenn. 1996)); *see also Harbour*, 732 S.W.2d at 600 ("That is not to say that the compromise agreement may not be a binding contract, subject to being enforced as other contracts . . . ."). Compromising parties may wish to have their agreement memorialized in the form of a consent judgment. "[A] consent judgment does not represent the reasoned decision of the court but is merely the agreement of the parties, made a matter of record by the court." *Harbour*, 732 S.W.2d at 599–600; *see also* 15A C.J.S. *Compromise & Settlement* § 33 (2002) ("A compromise is the law between the parties and a judicially-entered settlement agreement that becomes part of the stipulation that ends the litigation has the force and effect of a judicial decree."); 49 C.J.S. *Judgments* § 187 (1997) ("As a consent judgment has the sanction of the court, and is entered as its determination of the controversy, it generally has the same force and effect as any other judgment . . . ."). "An order for entry of a consent judgment is a judicial act in the sense that it requires the court to examine the record to determine its authority, but is ministerial in the sense that it is predicated on the agreement of the parties." 49 C.J.S. *Judgments* § 185 (1997).

The general rule that a court is not required to approve a settlement or compromise does not operate when a statute requires the court to "review the substance of the settlement, not just the fact of an agreement." *Envtl. Abatement, Inc.*, 27 S.W.3d at 539 n.9; *see also* 15A C.J.S. *Compromise & Settlement* § 22 (2002) ("However, situations in which prior approval of a settlement by the court is mandatory are the exception rather than the rule and may be governed by special legislation."). Here, due to the involvement of a minor in the litigation, we have a statute requiring the trial court to go beyond its normal role of merely entering a consent judgment memorializing the parties' private agreement. *See* Tenn. Code Ann. § 34-1-121 (2001); *see also* 15A C.J.S. *Compromise & Settlement* § 23 (2002) ("Generally, compromises and settlement in certain cases, such as cases involving class actions and infants, must be approved by the court.").

We cannot, however, subscribe to the Non-Settling Defendants' contention that Judge Williams, by performing her role under the applicable statute, is no longer impartial and must recuse herself. The Non-Settling Defendants correctly note the need for confidentiality in mediation. The rules governing mediation provide: "Evidence of conduct or statements made in the course of Rule 31 ADR Proceedings and other proceedings conducted pursuant to an Order of Reference shall be inadmissible to the same extent as conduct or statements are inadmissible under Tennessee Rule of Evidence 408." Tenn. S. Ct. R. 31, § 7 (2005). While counsel for Vannucci did disclose that the Non-Settling Defendants did not settle as a result of the court ordered mediation, Judge Williams

could infer this fact simply by recognizing that only the Settling Defendants sought to confirm their settlement with the minor and that the Non-Settling Defendants sought to attend the hearing. Nothing in the record suggests that Vannucci's counsel disclosed any facts or evidence related to any settlements discussed in the mediation. Further, Judge Williams statement of the evidence states that, during the hearing, "everyone carefully avoided the discussion of the non-settling defendants."

Moreover, unlike the facts in *Team Design*,[8] there is nothing in the record in the present case to suggest that Judge Williams undertook an effort to mediate or otherwise foster the compromise between the minor and the Settling Defendants. To the contrary, the record supports the conclusion that she merely sought to comply with the applicable statute by approving the compromise already negotiated by the parties during mediation. As the statute requires, Judge Williams merely convened a meeting with the relevant parties to approve the settlement. "A valid compromise agreement binds the parties to it and those in privity with them or claiming under them with notice, but it is not binding on persons not parties to the settlement or in privity with a party." 15A C.J.S. *Settlement & Compromise* § 43 (2002). "Furthermore, a joint tortfeasor who is not a party to a settlement is not bound by a compromise settlement made by another tortfeasor, and a compromise of litigation by one defendant does not conclude the codefendants, unless they consent to or ratify the settlement or the settlement extinguishes liability of all torfeasors on the verdict in a negligence action." *Id.* The Non-Settling Defendants, therefore, have no interest — other than their argument that Judge Williams is no longer impartial by virtue of fulfilling her role under the statute — in the compromise entered into between the Settling Defendants and the minor.

---

[8] The rules governing Alternative Dispute Resolution in this state provide:

> Trial Court Judges are authorized to conduct judicial settlement conferences in accordance with procedures to be developed by Local Rule, by Standing Order or in consultation with the parties. Without the consent of the parties, no Judge presiding over a matter may preside of a Judicial Settlement Conference respecting that matter.

TENN. S. CT. R. 31, § 20 (2005). A "Judicial Settlement Conference" is defined as "a *mediation* conducted by a judicial officer other than the judge before whom the case will be tried." *Id.*, § 2(e) (emphasis added). In *Team Design*, we noted that "should the judge who conducts the judicial settlement conference later be called upon to decide the issues of liability or damages, it is impossible to avoid questions as to whether he or she can disregard the matters disclosed during the conference or put aside any opinions or judgments already formed based on this information." *Team Design*, 104 S.W.3d at 523.

## IV.
### CONCLUSION

Although it appears as though Judge Williams received certain evidence at the hearing for the limited purpose of fulfilling her statutory obligation, we cannot say that she has prejudged the remainder of the case or no longer remains impartial. "Prior knowledge of facts about the case is not sufficient in and of itself to require disqualification." *Alley v. State*, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994). "Bias or prejudice in the disqualifying sense must stem from an extrajudicial source and not from what the judge hears or sees during the trial." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998). Accordingly, we hold that, given the unique facts of this case, Judge Williams did not abuse her discretion when she denied the Appellants' motion for recusal.

Costs of this appeal are to be taxed to the Appellants, W.B. Moss, M.D., W.B. Moss, M.D., P.C., Memphis Obstetrics and Gynecological Association, P.C., John Gayden, M.D., John Gayden, M.D., P.C., and their sureties for which execution, if necessary, may issue.

_____
ALAN E. HIGHERS, JUDGE

-16-