IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned September 5, 2012

**DAN J. MARCUM v. PAUL F. CARUANA, ET AL.**

**Appeal from the Circuit Court for Bedford County**
**No. 8911      Franklin L. Russell, Judge**

**No. M2012-01827-COA-10B-CV - Filed September 11, 2012**

The defendant in this action filed a motion for recusal with the trial judge alleging bias against both himself and his counsel. The trial judge denied the motion, and the defendant filed this interlocutory appeal as of right pursuant to Tenn. S. Ct. R. 10B. We affirm the trial court's denial of the motion for recusal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Suzette Peyton, Brentwood, Tennessee, for the appellant, Paul F. Caruana.

Andrew Clark Rambo, Shelbyville, Tennessee, for the appellee, Dan J. Marcum.

**OPINION**

This appeal arises out of the denial of a motion for recusal filed more than ten years after the commencement of the litigation. In September of 2001, Dan J. Marcum filed his original complaint against Paul F. Caruana alleging breach of a contract to buy shares of common stock in a Tennessee corporation, Tennessee Motors, Inc. At some point, the plaintiff amended his complaint to add, *inter alia*, a shareholder derivative claim, misrepresentation, and fraud.

On August 31, 2007, Mr. Marcum filed a motion for writ of attachment seeking to attach funds held by the Circuit Court Clerk in a condemnation case, *State ex rel. Dept. of Transportation v. West Coast LLC*. Mr. Marcum asserted that the property condemned was actually owned by Tennessee Motors, not West Coast. Mr. Marcum subsequently submitted, and the trial court entered, an order releasing $367,556.67 of the attached funds to pay the first mortgage on the property, which debt was in the name of Mr.

Caruana. The history of these orders is described in *State ex rel. Dept. of Transportation v. West Coast LLC*, 2009 WL 4801713 (Tenn. Ct. App. Dec. 14, 2009) (dismissing appeal for lack of final order).

On October 12, 2007, Mr. Caruana filed a motion to quash the writ of attachment and to disqualify opposing counsel. Following a non-evidentiary hearing on the motion, the trial court entered an order on November 26, 2007, directing the parties to brief additional issues and requiring both parties to be physically present at the next hearing. The court also directed Mr. Caruaca to prepare a proposed stipulation of facts and directed Mr. Marcum to advise Mr. Caruaca which of the facts could be stipulated and which would need to be determined at an evidentiary hearing. Mr. Marcum stipulated some of the facts proposed by Mr. Caruaca, but not all. The hearing never occurred.

On May 30, 2012, Mr. Marcum filed a motion to set the case for trial. Mr. Caruana opposed setting the case on the grounds a related federal court action, in which Mr. Caruana is a plaintiff and Mr. Marcum a defendant, was set to begin in October and counsel would not have time to prepare. Mr. Caruana also asserted he could not afford to travel for both the state court trial and the federal trial. At the same time, Mr. Caruana filed the motion for recusal that is the subject of this litigation.

The trial court denied the motion on August 16, 2012, and set the case for a bench trial to begin on September 19, 2012. Mr. Caruana filed a motion to continue the trial on August 21, supported by an affidavit of counsel regarding her schedule and her mother's health. On August 28, 2012, Mr. Caruana filed with the clerk of this court a timely petition for recusal appeal pursuant to Tenn. S. Ct. R. 10B, together with a motion to stay the proceedings in the trial court pending resolution of the appeal.

## I. APPEALS UNDER TENN. R. S. CT. 10B

Appeals from orders denying motions to recuse are governed by Tenn. S. Ct. R. 10B. Pursuant to Tenn. S. Ct. R. 10B, §2.01, parties are entitled to an "accelerated interlocutory appeal as of right" from an order denying a motion for disqualification or recusal. The appeal is effected by filing a "petition for recusal appeal" with the appropriate appellate court. Tenn. S. Ct. R. 10B, §2.02. In civil cases other than worker's compensation cases, this court is the appropriate appellate court. If this court, based on the petition and supporting documents, determines that no answer is needed, we may act summarily on the appeal. Tenn. S. Ct. R. 10B, §2.05. Otherwise, this court may order an answer and may also order further briefing by the parties. In addition, Tenn. S. Ct. R. 10B, §2.06 grants this court the discretion to decide the appeal without oral argument.

Pursuant to Tenn. S. Ct. R. 10B, §2.05, we have reviewed Mr. Caruana's petition and supporting documents, determined that an answer and additional briefing are unnecessary, and elected to act summarily on the appeal.[1]  We also find oral argument unnecessary pursuant to Tenn. S. Ct. R. 10B, §2.06.  Mr. Caruana's requests for additional briefing and oral argument are thus denied.

The **only** issue before this court in an appeal under Tenn. S. Ct. R. 10B is whether the trial court erred in denying the motion for recusal.[2]  We review the trial court's recusal decision under a de novo standard of review.  Tenn. S. Ct. R. 10B, §2.06.[3]

## II.  GROUNDS FOR RECUSAL

Mr. Caruana's motion for recusal alleges as grounds (1) that the trial judge "is biased" against both Mr. Caruana and his attorney and (2) that recusal is warranted to avoid the appearance of impropriety.

The importance of an impartial and unbiased court cannot be overstated.  As the Supreme Court has held:

> Litigants, as the courts have often said, are entitled to the cold neutrality of an impartial court.  *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App.1998).  Thus, one of the core tenets of our jurisprudence is that litigants have a right to have their cases heard by fair and impartial judges.  *Id.* at 228.  Indeed, it goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process.  *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App.1998).  Accordingly, judges must conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary and shall not be swayed by partisan interests, public clamor, or fear of criticism.  Tenn. Sup. Ct. R. 10, Cannon 2(A), 3(B)(2).

---

[1]An unordered Answer was, however, filed.

[2]The merits of any other rulings, even though those rulings cited as examples of bias, are not part of this appeal.

[3]Prior to the adoption of Tenn. S. Ct. R. 10B, appellate courts reviewed recusal decisions under an abuse of discretion standard.  *State v. Hester*, 324 S.W.3d 1 (Tenn. 2010); *Bailey v. Blount County Bd of Educ.,* 303 S.W.3d at 240*; State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995) ("A motion for recusal based upon the alleged bias or prejudice of the trial judge addresses itself to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record.")

*Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001)

> [W]e have observed that " '[i]f the public is to maintain confidence in the judiciary, it is required that cases be tried by unprejudiced and unbiased judges.' " *State v. Rimmer*, 250 S.W.3d 12, 37 (Tenn. 2008) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). . . *Leighton v. Henderson*, 220 Tenn. 91, 414 S.W.2d 419, 421 (1967) ("The purpose of Article 6, § 11 of our Constitution is to insure every litigant the cold neutrality of an impartial court.").

*Smith v. State*, 357 S.W.3d 322, 340 (Tenn. 2011).

Mr. Caruana's allegations fall under Rule 2.11 of the Rules of Judicial Conduct, which provides:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

> (1) The judge has a personal bias or prejudice concerning a party or party's lawyer, or personal knowledge of facts that are in dispute in the proceedings.

Rule 2.11(A) lists other specific situations which create questions regarding the judge's ability to be impartial, including defined relationships to the parties or counsel on the part of the judge or the judge's family. None of those situations is alleged to exist here.

In accordance with Tenn. S. Ct. R. 10B, §1.03, the trial judge filed a thorough memorandum opinion detailing the grounds for his denial of the motion for recusal. The trial judge recounted some of the history of the case, affirmed that he held no actual bias against either Mr. Caruana or his counsel, and addressed each of the specific instances Mr. Caruana had alleged were evidence of bias.

The question of recusal on the basis of bias involves two inquiries. The first is whether the judge has actual bias; the second is whether his or her impartiality might reasonably be questioned, *i.e.*, whether there may be an appearance of bias even though no actual bias exists. The public's confidence in the judiciary requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial.

As we said many years ago, it is of immense importance, not only that justice be administered ... but that [the public] shall have no sound reason for supposing that it is not administered. *In re Cameron*, 126 Tenn. 614, 151 S.W. 64, 76 (1912). If the public is to maintain confidence in the judiciary, cases must be tried by unprejudiced and unbiased judges.

*Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d at 564.

> *. . . State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006) (" '[T]he preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial.'") (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)); *Bd. of Prof'l Responsibility v. Slavin*, 145 S.W.3d 538, 548 (Tenn.2004); *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn.2001) ("If the public is to maintain confidence in the judiciary, cases must be tried by unprejudiced and unbiased judges."); *State v. Lynn*, 924 S.W.2d 892, 898 (Tenn.1996) ("It is the appearance that often undermines or resurrects faith in the system. To promote public confidence in the fairness of the system and to preserve the system's integrity in the eyes of the litigants and the public, 'justice must satisfy the appearance of justice.'") (quoting *Offutt v. United States*, 348 U.S. 11, 13, 75 S.Ct. 11, 99 L.Ed. 11 (1954))

*Smith v. State*, 357 S.W.3d at 340.

A trial judge should grant a recusal motion not only when he or she has any doubt as to his or her ability to preside impartially in the case, *i.e.*, where actual bias is alleged, but also when "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *State v. Hester*, 324 S.W.3d 1; *Bean v. Bailey*, 280 S.W.3d at 805 (citations omitted).

Thus, even when a judge believes that he or she can hear a case fairly and impartially, the judge should grant the motion to recuse if "the judge's impartiality might reasonably be questioned." Tenn. Sup.Ct. R. 10, R. 2.11(A); *Bean v. Bailey*, 280 S.W.3d at 805. The test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias. *Smith v. State*, 357 S.W.3d at 341; *Davis*, 38 S.W.3d at 565.

# III. ANALYSIS

In examining requests for recusals for bias, it is important to keep in mind the fundamental protections that the rules on recusals are intended to provide. The Constitutional provision, Article VI, section 11 of the Tennessee Constitution, provides that "[n]o Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested . . . ." That provisions is intended "to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor." *Bean*, 280 S.W.3d at 803 (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see also Chumbley v. People's Bank & Trust Co.*, 57 S.W.2d 787 (Tenn. 1933).

Generally, the terms "bias" and "prejudice" refer to a state of mind or attitude that works to predispose a judge for or against a party. *Alley v. State*, 882 S.W.2d at 821. However,

> not every bias, partiality, or prejudice merits recusal. To disqualify, prejudice must be of a personal character, directed at the litigant, "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from ... participation in the case."

> * * *

> If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge.... However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial.

*Id*. (citations omitted.). *See also Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App.1980).

It is well settled that "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias." *Keisling v. Keisling*, 92 S.W.3d 374 (Tenn.2002); *Alley*, 882 S.W.2d at 821. The reason for this proposition has been explained:

> [T]he mere fact that a judge has ruled adversely to a party or witness . . . is not grounds for recusal. Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a

witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon.

*Davis*, 38 S.W.3d at 565 (citations omitted).

Thus, the mere fact that a judge has ruled adversely to a party or witness is not grounds for recusal. *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995). If the rule were otherwise, recusal would be required in every case since trial courts necessarily rule against at least one party on all motions and other proceedings.

The majority of factual allegations Mr. Caruana makes in support of his claims of bias are, actually, rulings of the trial court or, the failure to rule. Essentially, Mr. Caruana asserts that because the trial judge did not grant the relief he requested, the trial judge must be biased. Indeed, the petition argues that bias is obvious from the rulings, e.g., "Appellant certainly is justified in believing that bias appears to be the only reason for the trial judge to ignore or misconstrue appellant's legal arguments." The argument in the appeal petition is replete with questions asking "why else," other than bias, would the court have taken the action it did. Many of the arguments go more to the merits of the decisions rather than the bias of the judge.

Even though adverse rulings are not generally enough to support a motion to recuse, we will nonetheless examine some of Mr. Caruana's arguments. A number of complaints stem from the writ of attachment described earlier. In August of 2007, Mr. Marcum filed a motion for writ of attachment seeking to attach funds held by the Circuit Court Clerk in a condemnation case, *State ex rel. Dept. of Transportation v. West Coast LLC*. Mr. Marcum asserted that the property condemned was actually owned by Tennessee Motors, not West Coast.

On October 12, 2007, Mr. Caruana filed a motion to quash the writ of attachment and to disqualify opposing counsel. Following a non-evidentiary hearing on the motion, the trial court entered an order on November 26, 2007, directing the parties to brief additional issues and requiring both parties to be physically present at the next hearing. The court also directed Mr. Caruaca to prepare a proposed stipulation of facts and directed Mr. Marcum to advise Mr. Caruaca which of the facts could be stipulated and which would need to be determined at an evidentiary hearing. Mr. Marcum may have agreed to some of the proposed stipulations by Mr. Caruaca, but certainly not all.

It appears that a large issue in this case is the ownership of Tennessee Motors. Presumably as part of the derivative action, Mr. Marcum had added Tennessee Motors as a plaintiff, and that entity was also a defendant. The basis for Mr. Caruaca's motion to disqualify plaintiff's counsel was that counsel for plaintiff appeared as counsel for plaintiff Tennessee Motors, while suing that corporation and while counsel for defendant already represented Tennessee Motors as the defendant.

Now, as part of the argument on recusal, Mr. Caruaca objects to the writ itself and to the fact that the writ has been in effect for five years and the court has not quashed it. After the hearing in which only the lawyers appeared, in 2005, the trial court determined that it needed to hear evidence to sort out the issues raised in both motions filed by Mr. Marcuna. So, the court ordered that the parties appear at the next hearing and that the parties try to stipulate as to relevant facts.

Mr. Caruaca vehemently objected to the fact he would have been required to travel to Tennessee from Nevada for that hearing and, apparently, never did so. He also now argues that this order shows bias against him. We find nothing unusual or prejudicial for a court to require evidence to determine disputed facts relevant to motions filed by a party, here Mr. Caruaca.

Counsel for Mr. Caruaca argues that the trial court should have ruled on the motions based upon the record, that the illegality of the attachment was apparent on its face, and that it was obvious that opposing counsel could not represent Tennessee Motors and also sue it. Again, the fact that the trial court required evidence of some type regarding ownership of Tennessee Motors and the relationship between the parties and entities involved in both cases is not an indication of bias.

In this court, Mr. Caruaca asserts that the trial court misconstrued his argument regarding the objections to the evidentiary hearing when that court described the complaint as objecting to the trial court's refusal to grant summary relief. Counsel asserts that she never sought summary relief, stating she never filed a Rule 56 or 12 motion, but instead only an adjudication based solely upon the filings. We are unable to find a distinction. Counsel also argues that the trial court's mistaken and "unfounded" characterization of the argument was evidence of bias.

To the extent Mr. Caruana asserts the *ex parte* communications themselves, alleged to have taken place prior to the entry of the two orders, are evidence of bias, those events took place in 2007. Recusal motions must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality. *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). An alleged prejudicial event cannot

be silently preserved as an "ace in the hole to be used in the event of an adverse decision." *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988).

In any event, the trial court described the communications. After the attachment issued, Pinnacle Financial, the holder of a security interest in the condemned property, placed an unsolicited call to the trial judge complaining that the attachment interfered with Pinnacle's ability to receive payment for its lost security. The trial court clerk communicated a similar message to the trial judge. The trial judge referred Pinnacle to counsel. The writ of attachment and the order releasing funds to the bank[4] are the subject of the claims of bias, and those are the relevant acts.

Mr. Caruaca takes special exception to the order setting the trial in this case over his objection and to the trial court's denial of a continuance despite the upcoming federal trial and the illness of counsel's mother. The only question before this court is whether those decisions evidence a bias or prejudice against Mr. Caruana or his counsel.[5] The trial judge set forth his impartial reasoning for each of those questioned decisions. Having carefully reviewed the record before us, we find no evidence of bias in the trial court's rulings on the trial date.

Counsel for Mr. Caruana also alleges that the trial court is biased or prejudiced against her, and relies in part on statements made by the trial court in various hearings during the course of this long-pending litigation. In particular she alleges that the trial court called into question the accuracy of some of her statements. One such incident involved counsel's representation to the trial court of the substance of a conversation she had had with his deputy clerk with regard to a hearing time. It is clear from the transcript that the court believed that counsel's version of the conversation did not match that of the deputy clerk. We refuse to hold that a court cannot question lawyers about the correctness of statements made to the court without subjecting itself to recusal motions.

Counsel for Mr. Caruana also points to other statements as evidencing bias against her, including a discussion in the hearing on the motion to recuse about "abrasive"

---

[4]Mr. Marcum subsequently submitted, and the trial court entered, an order releasing $367,556.67 of the attached funds to pay the first mortgage on the property, which debt was in the name of Mr. Caruana, and the mortgage was held by Pinnacle Financial. The history of these orders is described in *State ex rel. Dept. of Transportation v. West Coast LLC*, 2009 WL 4801713 (Tenn. Ct. App. Dec. 14, 2009) (dismissing appeal for lack of final order).

[5]The denial of the continuance and the trial judge's other rulings are not on appeal, and the correctness of those decisions is not before us.

lawyers in general and the lack of correlation between that quality and success in court.[6] We have reviewed all the transcripts provided and must conclude that the trial judge's statements concerning counsel do not rise to the level of bias. Judges inevitably form opinions about both parties and counsel during the course of litigation. Those opinions are not always positive. The Rules of Judicial Conduct do not require recusal merely because a judge has formed an opinion that a particular counsel is abrasive or has a litigation strategy that might include delay as a tactic. *See Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse.)

## IV. CONCULSION

The trial court's order denying the motion for recusal is affirmed. The motion to stay the proceedings in the trial court pending resolution of the appeal is denied as moot. Paul F. Caruana and his surety are taxed with the costs for which execution, if necessary, may issue.

_____
PATRICIA J. COTTRELL, JUDGE

---

[6]Counsel also suggests that the trial court made "veiled criticism" of her competence and cites that as another indication of prejudice against her. However, in the same paragraph, she alleged that the trial judge either "could not comprehend" her arguments or simply refused to consider the legal challenges she raised.