Ira Leighton

*v.*

C. Murray Henderson, Warden, etc.

414 S.W.2d 419.

(*Nashville,* December Term, 1966.)

Opinion filed April 7, 1967.

92

LLOYD COMER, Lawrenceburg, for petitioner, Leighton.

WILLIAM A. HARWELL, District Attorney General, Columbia, and JOE W. HENRY, JR., Pulaski, for C. Murray Henderson, Warden.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Leighton filed his petition for habeas corpus in the early part of January, 1966, in the Criminal Court of Davidson County, Tennessee, and the same was trans-

ferred to the Circuit Court at Lawrence County pursuant to statute, T.C.A. sec. 23-1840.

The case subsequent to that time through various motions has been twice before this Court. In an opinion of *Leighton v. Henderson,* 219 Tenn. 108, 407 S.W.2d 177, we held that after habeas corpus had been granted, and pending its appeal to this Court, the prisoner would be allowed bail.

Prior to the hearing of this petition in Lawrence County, the trial judge made certain statements, and as a result of which the Warden moved that the trial judge recuse himself and ask another trial judge to sit for him because of his incompetency or that he certify his incompetency to the Governor. The basis of his motion was that some two years before this petition was filed the trial judge had written the State Board of Pardons and Parole advising them in part, 'I personally feel that he has served sufficient time in the penitentiary and I unhesitatingly recommend that his sentence be commuted to time served so as to make him eligible for immediate parole.''

When the question came up as to when this petition for habeas corpus should be heard in a colloquy between counsel on the various sides and the court, the court among other things said, ''I don't care what proof is in the record, if the Governor doesn't pardon this man, I am going to grant the petition, set the trial for June 2nd.'' Then there follows various and sundry statements between counsel and the court, and the court finally set the case—not on June 2nd but on a later date—because he was convinced at that time that bail could be granted pending the hearing on the habeas corpus. This rule

was later corrected by this Court in an order holding that pending the hearing of a habeas corpus bail was not allowable. Leighton then, after having been let out on bail, pending the hearing on the habeas corpus, was picked up pursuant to our ruling and put back in prison until the case was heard on his petition for habeas corpus. The trial judge then in a lengthy finding of facts, found in the record, sustained Leighton's petition for habeas corpus, released him from prison on bail pending the appeal to this Court. Among other things in the memorandum opinion the trial judge said this:

"That the general feeling of the Court, the Special Prosecutor and the Attorney-Generals Office was one of vindictiveness toward the petitioner who stood accused of the murder of their friend, to the extent that their entire motivation was to the conviction of the petitioner as quickly as possible."

■ ■ Thus it is, in view of these things the Warden now insists that it was error for the trial judge to try this case because he had before the trial thereof on occasions, hereinabove referred to, expressed himself as to what he would do with the case regardless of what the proof was. Counsel for Henderson still insist, in one of their assignments of error, that the trial judge erred in hearing this case and should have recused himself. We now take up this proposition only because we feel that this error should be sustained, and that it was error in view of the statements above quoted for the trial judge to pass upon the question wherein Leighton is a party on one side and Henderson, Warden of the State penitentiary, is the party on the other side. In the trial of any lawsuit the judge must be careful not to give an expression to any thought, or to infer what his opinion would

be in favor or against either of the parties in the trial. The judge, of course, must be patient, yet firm, and not allow his personal feelings to enter into the trial of any lawsuit.

This Court set forth the law as to the trial judge sitting on a case, when he has expressed an opinion, in very clear and succinct language in *In re Cameron,* 126 Tenn. 614, 151 S.W. 64. We can and should decide this lawsuit on what this Court said in *In re Cameron,* supra. What the trial court said in the instant case clearly indicates that the judge had already decided the matters involved. This Court said *In re Cameron:*

"Neither the Constitution nor the statutory provision covers in terms the case of a judge who has already decided the controversy before he has heard it. We are of the opinion, however, that such a case falls within the meaning of both; that is, of the provision in each that no judge shall preside in any case in which he may have been of counsel, or in which he may have presided in any inferior court. The purpose of these two provisions was to guard against prejudgment of the controversy. It was necessarily supposed, as the basis of these provisions, that where a judge had been of counsel, he had already made up his mind as to the merits of the case; equally where he had presided in the trial of the case in the inferior court, and had decided it, or had taken part in the decision of it." [Pages 657, 658, 126 Tenn., p. 76 of 151 S.W.]

Before making this statement the Court had quoted what is now our statute, T.C.A. sec. 17-201. The Court then went on to say:

"* * * The fundamental principle is that parties litigant are entitled to an impartial judge. * * * But it is of immense importance, not only that justice shall be administered to men, but that they shall have no sound reason for supposing that it is not administered. * * * We say it is a fundamental principle that the judge shall be impartial. * * *

"Beyond question it is not according to due course of law to compel a man over his protest to try his case before a judge who has already decided it, and has announced that decision in advance of the hearing. It is equally true that such compulsion is a denial of justice. * * *

"* * * It would have been far safer, however, and more in accordance with the proprieties of the situation, after having formulated the charges (in the form of charges and not of decision), to have interchanged with some other judge to try the case, in view of the personal feeling which he entertained by reason of the gross discourtesy to which he had been subjected by counsel in the matters leading up to the present controversy. He did not, however, do this, nor was he bound to do so; but he was bound not to decide the case in advance, either orally or by a decision put upon the record, as shown by his language copied into this opinion. Having so decided the matter, he immediately became incompetent to try it."

■ This Court by statute hereinbefore referred to (T.C.A. sec. 23-1840), has the authority when matters are brought to the attention of the Chief Justice to transfer these habeas corpus cases back to the court where they were originally tried and to create venue there

rather than in the county in which the prisoner is situated. The purpose of passing this venue statute is obvious because in the county where the man was originally tried the officers and witnesses are there and all things of that kind. Of course, frequently since this Act was passed it happens that the trial judge to whom the case has been transferred finds that he should recuse himself, because he is accused of one thing and another by the prisoner in his petition for habeas corpus. Thus it is that it very frequently happens that the trial judge communicates this fact to the Chief Justice who in turn, under T.C.A. sec. 17-215, sec. 17-216 and sec. 17-323, appoints a special judge to hear the habeas corpus petition. Of course, throughout the history of this State different judges of adjoining districts have interchanged with each other, one trying a case for the other when he thought he was incompetent for different reasons, but has thus recused himself and got his brother in an adjoining circuit to sit for him. Likewise, if he can't do this and hasn't communicated the fact to the Chief Justice, under T.C.A. sec. 17-221 et seq., he can certify his disability to the Governor. The trial judge in the instant case, after expressing himself as he did here and after having the motion of the State for him to recuse himself, did not take advantage of any of these opportunities but went on and heard this trial. In doing so it is the unanimous opinion of this Court that he erred, and it is for this reason, and this alone, that this case must be reversed and remanded.

In the trial of any lawsuit it is presupposed that a competent judge will preside and have charge of the case in which he passes on questions of pleading, evidence and procedure, and gives instructions to the jury or determines the lawsuit without the intervention of a

jury. The purpose of Article 6, sec. 11 of our Constitution is to insure every litigant the cold neutrality of an impartial court.

We now revert again to *In re Cameron,* at page 662, 151 S.W. 77 where it was said:

"* * * It is provided in the statute referred to that the appellate courts of this state shall not reverse on any of the grounds stated, unless it shall affirmatively appear that the error complained of has effected the results of the trial. Whose error? Manifestly the error of a competent judge in charge of the case in the court below. To apply this statute to a case where the judge is incompetent, and his incompetency not only not waived, but openly objected to, would be not only to deprive the litigant of his right to his trial in a court of first instance, but would require this court to exercise original jurisdiction, since there is no doubt that under such circumstances the judgment of the court below is simply void" (Citing authorities.)

The statute referred to in this instance is the harmless error statute, T.C.A. sec. 27-117.

Then again in *In re Cameron,* at pages 665, 151 S.W. at page 78, the following statement is made which is applicable here.

"* * * A court is not lawfully constituted, as to the special case, if the judge is incompetent to try it, and his incompetency is objected to at the time. As to that case it is the same as no court if the judge be incompetent. It is not only the right of a party under the distribution of judiciary powers directed by the Constitution, and ascertained and formulated by legislative acts, to have his case first tried in the lower court; but

it is important that he should have the benefit of those proceedings, not only for the aid they may furnish on a subsequent trial in this court, or the court of civil appeals, but also because of the possibility of a termination of the controversy in that court without the expense and delay of a trial in an appellate court. A denial of such preliminary trial is a deprivation of the right guaranteed to every citizen to have his case tried according to due course of law and is a violation of article 1, sec. 17, of the Constitution, supra.''

█ It certainly seems possible and probable from this record that the trial judge herein, the one who tried Leighton in beginning in 1943, may be a witness on his behalf when this case is tried before a competent trial judge. T.C.A. sec. 24-107 provides that such a person is a competent witness subject to all rules of cross-examination and otherwise as any other witness.

For the reasons herein stated this cause is reversed and remanded for a new trial before a competent judge as it must be originally tried before a trial judge who has not expressed himself one way or the other, and is not interested one way or the other in the outcome of the trial. This case must be first heard and passed on by such trial judge before an appellate court has the right to pass on the questions presented.

Until this petition for habeas corpus is passed on by a competent judge it is necessary that the order granting bail herein should be revoked and that Leighton should be remanded to the custody of the Warden who will forthwith cause him to be confined in the State penitentiary pending further proceedings in this habeas corpus petition.

The Court at the present time through the Chief Justice appoints the Honorable J. Fred Bibb, retired Criminal Judge of Knox County, to hear this petition for habeas corpus which can be set in the early days of June. The Chief Justice will write to the Honorable J. Fred Bibb a letter designating him to try this case and counsel for respective parties will communicate with Judge Bibb in reference to setting a trial date which could be set, as the Court understands it from communication with Judge Bibb, the first two or three days in June prior to the meeting of the State Bar Association.

For reasons above stated the judgment herein is reversed and the cause remanded for further proceedings.