# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 9, 2002 Session

## SARAH MASSIE JOHNSON (NEELEY) v. KEITH ROBERT JOHNSON

**Appeal from the Circuit Court for Davidson County**
**No. 92D-3060     Marietta Shipley, Judge**

---

**No. M2002-00354-COA-R3-CV - Filed January 9, 2003**

---

The trial court granted the father's petition to suspend the mother's impending visitation with the parties'13-year-old daughter. The mother then moved the trial judge to recuse herself from any further involvement in proceedings relating to custody of the child or to visitation. She claimed that an ex parte communication between the father's attorney and the judge prior to the hearing on the father's petition created the appearance of partiality or bias. The judge denied the mother's motion to recuse. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and W. MICHAEL MALOAN, SP. J., joined.

Jon S. Jablonski, Nashville, Tennessee, for the appellant, Sarah Massie Johnson Neeley.

Joe Binkley, Jr., Nashville, Tennessee, for the appellee, Keith Robert Johnson.

### OPINION

### I. A STRUGGLE FOR CUSTODY

The motion to recuse in this case comes in the midst of a battle between Sarah Massie Johnson Neeley and Keith Robert Johnson over custody and visitation rights to their only child. Judge Marietta Shipley of the Davidson County Circuit Court conducted all the hearings on the numerous motions and pleadings filed by the parties during their ongoing nine-year struggle, including disputes about the choice of a pediatrician for the child, the best school for her to attend, and the expenses of orthodontic care. We will only mention a few of the procedural highlights of that struggle as we discuss the events that led up to the motion at issue.

When the parties divorced in 1993, the court ratified their marital dissolution agreement, which provided for joint custody of Anna Keith Johnson, their then four-year-old daughter, with the mother named as the primary custodial parent. This arrangement held until 1996, when Mr. Johnson filed a petition for change of custody. He alleged that Ms. Neeley was an alcoholic, that she had begun drinking heavily, and that this was extremely distressing to Anna Keith. The father asked for a restraining order to prevent the mother from consuming alcohol while the child was in her possession, and for sole custody.

In her answer and counter-petition, the mother admitted she was a recovering alcoholic, but denied the conduct alleged by the father. She also claimed that Mr. Johnson was emotionally abusive to Anna Keith, and asked for sole custody of the child. After an initial hearing, the trial court granted the restraining order, and ordered Ms. Neeley to attend meetings of Alcoholics Anonymous. The court also appointed a guardian ad litem for Anna, and ordered the parties to mediate their differences. The mediation failed.

A hearing on the competing petitions followed. The court's subsequent order, entered on July 22, 1997, directed that joint custody was to continue, but that neither party was to be designated as the primary physical custodian. The child was to reside an equal amount of time with each parent, on a schedule of alternating weeks. Ms. Neeley was to continue with Alcoholics Anonymous, and the guardian ad litem was to maintain contact with the child. Further, "if appropriate, the Guardian ad litem and/or the Father, Keith Johnson, shall bring to the attention of the Court any additional incidents or behavior by the Mother, Sarah Johnson, especially regarding impaired driving or other behavior that would affect the safety of the minor child." In 1999, the trial court entered a more detailed permanent parenting plan.

In August of 2000, the guardian ad litem filed a Motion for Emergency Review in the trial court. The guardian claimed that the custody arrangement was not working in Anna's best interest, that the minor child had told her she wanted to live with her father full time, and that the mother had a relapse of her alcohol problem during a recent vacation trip to Florida with her daughter and the daughter's classmate.

In response to the guardian's motion, both parties submitted new parenting plans. The father also filed a response which alleged that John Neeley, the mother's current husband, had been physically and verbally abusive towards Anna Keith, had made countless derogatory remarks about Mr. Johnson and his current wife, and that he had made a threatening telephone call to the guardian ad litem, to the effect that she should "watch her back," and that he was placing her in the same category as Joe Binkley (the husband's attorney).

After a hearing on the motion, the court suspended the 1999 parenting plan, made the father the child's primary physical custodian, fashioned an interim visitation schedule for the mother, and directed the parents to agree upon a Permanent Parenting Plan. On March 1, 2001, the court adopted a new parenting plan which gave the father custody of the child during the week, and the power to

make all major decisions regarding her welfare, with the mother to have visitation every weekend.

## II. THE MOTION TO RECUSE

On November 7, 2001, Mr. Johnson filed a Petition for a Temporary Restraining Order to suspend the mother's visitation, pending a hearing on some disturbing allegations about the mother's conduct. The father stated that on October 31, 2001, his daughter had been called out of class for an interview with a representative of the Department of Childrens' Services, in response to an anonymous phone call that alleged that Mr. Johnson's wife, her daughter, and Anna Keith had engaged in sexual conduct of an inappropriate nature, which we need not describe here in any detail. The Department found the allegations to be baseless.

Mr. Johnson claimed that Ms. Neeley had earlier made the same false allegations to Anna Keith's doctor, and that all the circumstances pointed to the mother as the anonymous caller. In any case, the father stated that his daughter's immediate reaction was that this was all the mother's doing, and that the thirteen-year-old was embarrassed, angry, and wished not to spend any more time with the mother and the mother's husband. He argued that if Ms. Neeley exercised her court-ordered visitation, it would further destroy the relationship between Anna and her mother, and could possibly lead to verbal or physical abuse by Ms. Neeley or her husband. The petition was accompanied by a printed copy of a very angry e-mail message from Anna to her mother, and medical records that documented the mother's previous discussion with her daughter's doctor, as well as the doctor's response.

Judge Shipley conducted a hearing on the father's petition on November 8, 2001. During the hearing, the judge announced that she wanted to hear from the child. Anna Keith was brought into the judge's chambers, where she discussed her situation and explained her feelings outside the presence of her parents, but in the presence of their attorneys. After the hearing, the court granted the temporary restraining order.

On November 30, 2001, the mother filed a Motion to Alter or Amend the Temporary Restraining Order and a motion for Judge Shipley to recuse herself from hearing any further proceedings in this case. Ms. Neeley's attorney claimed that he had been given no prior notice of Anna's appearance before the court, that the appearance came about as a result of an improper ex parte request, and that it was in violation of previous orders of the court. He also claimed that during the hearing Judge Shipley expressed an inappropriate interest in the identity of the person who made the anonymous report to the Department of Children's Services. The attorney argued that these facts brought the judge's impartiality into question. After a hearing on December 14, the trial court denied the motion to alter or amend. In regard to the other motion, the judge stated,

> "The court has been involved with this child and her parents and has a long history
> to draw on in dealing with custody and visitation issues. Although this court

-3-

understands why it appears to Mrs. Neeley that the court's decision to hear the child goes against the prohibition in the parenting plan and why Mrs. Neeley feels the ways she does so strongly that she has filed the motion to recuse, the court denies Mrs. Neeley's Motion to Recuse."

This appeal followed.

### III. THE APPEARANCE OF IMPARTIALITY

Civil litigants have a constitutional right to have their cases heard before an unbiased and impartial judge. *See* Tenn.Const. Article VI, § 11. As our courts have often said, parties are entitled to "the cold neutrality of an impartial court." *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998); *Leighton v. Henderson*, 414 S.W.2d 419 (Tenn. 1967). In light of the importance of maintaining public confidence in the fairness of the judicial system, even the appearance of bias or partiality may sometimes require a judge to recuse himself or herself from a case. *See Davis v. Liberty Mutual Insurance*, 38 S.W.2d 560 (Tenn. 2001). *See also* Rule 10, Canon 3(E)(1), Rules of the Supreme Court.

In this case, the appellant's counsel does not argue that Judge Shipley is actually biased against his client, but rather that the events leading up to Anna's appearance at the hearing of November 8, and the questions the judge asked during that hearing create the appearance of bias, and thus that she is obligated to recuse herself. We discuss these arguments below.

### A.

The appellant's attorney complains that he did not receive prior notice that Anna Keith would be heard.[1] He also argues that in order to secure the minor child's attendance at the hearing, the judge had engaged in ex parte communication with Mr. Johnson's attorney, in violation of Canon 3(B)(7) of the Code of Judicial Conduct, which allows such communication only under limited circumstances, such as for

> . . . scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

> (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication; and

---

[1] The appellant also claimed that the judge's willingness to hear from the minor child appeared to be contrary to some of the court's earlier rulings. However, those rulings have no relevance to the current dispute, but were apparently cited to reinforce the implication that the appellant was blind-sided by the judge's order for Anna Keith to appear. In a proceeding involving telephone visitation, the judge stated from the bench that Anna Keith had had her day in court, and would not be heard from again. Obviously, this statement could not preclude the court from questioning the child about subsequent unrelated events. Other cited orders prohibited the parties from discussing court proceedings with the child, and thus did not apply to the judge at all.

(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

We must examine the circumstances surrounding Anna's appearance to determine if the judge's actions were in violation of Canon (3)(B)(7).

The father's petition was filed on November 7, 2001. Because of its urgent nature, the trial court scheduled the hearing for the following day. At 2:00 p.m. on that day, Mr. Binkley took a break from an appearance in the General Sessions Criminal Court to speak with personnel in Judge Shipley's office. He asked them whether the court wished to hear argument from the attorneys only, or testimony from the parties and/or Anna Keith. After checking with the judge, the court staff told him that she wanted to hear from Anna Keith. Mr. Binkley then returned to General Sessions court. Judge Shipley continued to preside over other cases in her courtroom. The hearing at issue began later that afternoon. Both Judge Shipley and Mr. Binkley apologized to Ms. Neeley's attorney for not contacting him about Anna's appearance prior to the hearing.

The communication the appellant objects to involved a scheduling or administrative question, and did not deal with substantive matters, or the merits of the case. It would also be obvious to any observer that it occurred in the way it did because of the expedited hearing schedule on the father's petition, and not because of any favoritism on the part of the judge. Further, we believe that the appellant received notice as promptly as was practical under the circumstances.

The appellant's attorney argues that he was placed at a tactical disadvantage because he did not have the opportunity to prepare for Anna Keith's testimony. However, despite the fact that his opponent was informed a few hours earlier than he was that the minor child would be heard from, it appears that neither party had much opportunity to prepare. Further, the videotape record of the hearing in chambers shows that both attorneys had the opportunity to ask the witness questions, but that they both took a fairly passive role, while the judge took the lead in questioning Anna about the reasons she did not want to visit with her mother.

**B.**

The appellant also claims that prior to and during the hearing in chambers, the trial judge was "overly curious" about the identity of the anonymous tipster who contacted the Department of Children's Services. She argues that such curiosity creates an impression of partiality, and violates the spirit of Tenn. Code Ann. § 37-4-109, which was designed to encourage the reporting of actual incidents of child abuse to the Department of Childrens' Services by making the identities of parties who report such abuse immune from disclosure.

We believe, however, that some discussion of the question was unavoidable, since the basis of the father's petition was that Anna Keith was furious with her mother because she believed that the mother was the source of the false and humiliating communication to DCS. Further, the videotape shows that during the hearing in chambers, it was Anna who insisted that the anonymous informant was her mother, while the judge tried to steer the conversation away from that question,

-5-

and towards the accommodations the child would have to make with her mother, regardless of her feelings or beliefs.

## C.

We note that the decision to grant or deny a motion to recuse is in the first instance a matter within the discretion of the judge against whom the motion is directed. *State v. Smith,* 993 S.W.2d 6 (Tenn. 1999); *Ellison v. Alley*, 902 S.W.2d 415 (Tenn. Ct. App. 1995); *Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn. Crim. App.1991). Such a decision will not be reversed on appeal unless that discretion has been abused. *Harris v. State*, 947 S.W.2d 156 (Tenn. Crim. App. 1996); *State v. Hines,* 919 S.W.2d 573 (Tenn. 1995).

After thoroughly studying the record and the arguments of the appellant, we do not believe that Judge Shipley's conduct creates even the appearance of partiality. No doubt Ms. Neeley would like to have a different judge take over this case, since she has seen her court-mandated time with her daughter steadily reduced. But adverse rulings by a trial court are not in themselves sufficient grounds to establish bias. *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996). Also, where a court has been involved in a case for a very long time, recusal is not favored because of the expense and difficulty of starting over. *Dunlap v. Dunlap,* 996 S.W.2d 803 (Tenn. Ct. App. 1998). It appears to us that there was no abuse of discretion by Judge Shipley, and we affirm her decision not to grant the motion to recuse.

## V.

The order of the trial court is affirmed. Remand this cause to the Circuit Court for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.