# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE v. LESERGIO DURAN WILSON

### Appeal from the Criminal Court for Davidson County
### No. 2010-B-1227    Cheryl A. Blackburn, Judge

---

### No. M2013-00306-CCA-10B-CD - Filed February 13, 2013

---

### OPINION

The Appellant, Lesergio Duran Wilson, petitions this Court for an accelerated interlocutory appeal as of right pursuant to Tennessee Supreme Court Rule 10B, Section 2. The Appellant seeks review of the trial court's order denying his motion to recuse. After a thorough review of the petition, this Court concludes that the trial court properly denied Appellant's motion for recusal. The order of the trial court is affirmed.

**Tenn. Sup. Ct. R. 10B; Appeal as of Right; Order of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

C. Dawn Deanor, Pubic Defender; Jonathan F. Wing, Assistant Public Defender; Kristin Stangl, Assistant Public Defender; Paul Bruno, for the Appellant, Lesergio Duran Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter, for the Appellee, State of Tennessee.

*Background*

The Appellant, Lesergio Duran Wilson, has been indicted for premeditated first degree murder in this case (2010-B-1227). He was also indicted for felony first degree murder and especially aggravated robbery in a separate case (2010-C-1912). The State elected to try the Appellant in case 2010-C-1912 first, and the Appellant was convicted by a jury of the charged offenses. The trial court sentenced the Appellant to life plus twenty-five years. The State, relying on those convictions in support of one of two alleged aggravating circumstances, has filed notice of its intent to seek the death penalty in case 2010-B-1227. The Appellant's trial in this case is scheduled to begin September 2013.

*Motion to Recuse*

Pursuant to Supreme Court Rule 10B, the Appellant filed a motion requesting the trial court to recuse itself from further participation in case 2010-B-1227. The Appellant alleged the following grounds for recusal:

(1) The trial court previously presided over the Appellant's trial in case 2010-C-1912, which ended with convictions for first degree murder and especially aggravated robbery, as well as the subsequent sentencing hearing in that case, which resulted in a sentence of life plus an additional twenty-five years;

(2) During the sentencing hearing and pretrial bond hearing in case 2010-C-1912, the trial court made rulings and statements which indicated it has pre-judged the Appellant's guilt in this case; and

(3) Specific events occurred during the sentencing hearing in case 2010-C-1912 which create in a person of ordinary prudence a reasonable basis to question the trial court's impartiality in the instant case.

As to the first alleged ground, the Appellant asserted that the trial court "heard proof and arguments designed to convince both the jury and the Court that the crime he committed was 'the worst of the worst' and that he was a cold-blooded killer. It would be impossible for any Court to listen to such proof without forming an opinion that would bias it against [the Appellant] in a subsequent case."

The trial court ordered consecutive sentencing in case 2010-C-1912 based upon its finding that the Appellant is "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." *See* Tenn. Code Ann. § 40-35-115(b)(4). The trial court made the following comments in support of its finding:

The facts of this case are pretty clear and just from the position of the victim and the way the bullet was, he was practically executed while he – the money or his possessions were out on the hood of the car, so there was really absolutely no reason to take this man's life. And he was executed. There's no – even though the defendant said something about self-defense, there's absolutely no evidence of that at all. And his statement about the other homicide, which was committed with the same weapon, which was just a short time prior to that, would indicate not only is he a dangerous offender but the aggregate term must relate to the severity of the offenses. There's two

-2-

homicides. It's necessary to protect the public from further serious criminal conduct by the defendant. I think the [*State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995)] factors apply. Clearly two homicides in a short period of time involving execution-style matters would indicate we need to keep Mr. Wilson incarcerated as long as possible to protect the public from further serious criminal conduct by the defendant.

The Appellant gave a statement to the police after his arrest which apparently included admissions to both homicides. The Appellant filed a motion to suppress that statement prior to trial in case 2010-C-1912, but the motion was denied. According to the Appellant's argument for recusal, given his statement to the police and the fact that the two homicides occurred close in time to each other, the trial court "seems to have pre-judged that [the Appellant] was guilty of both of them from the start."

The Appellant also relied upon statements made by the trial court during the pretrial bond hearing. In denying the Appellant's motion to reduce bond prior to trial in case 2010-C-1912, as well as denying bond in case 2010-B-1227 because, at that time, it was a potential death penalty case, the court stated:

> Because the proof I've heard today is – indicates he has – he is stopped with the gun that's used in both of them. In addition to that he admits involvement in both of them, admits shooting Mr. Hurst himself [the victim in case 2010-B-1227], and admits shooting or firing a shot at the other and identifies himself as having been at the location of the other. It's clearly a felony murder. So those – the proof is pretty great given his admission.
>
> Now, looking at the other factors in [Tennessee Code Annotated Section] 40-11-118(b), his length of residence in the community, his grandmother testified to that. He's lived here most of his life. His employment status and history and financial consideration, she said he worked sometimes but not much. She's been taking care of his kids. His family ties and relationships, obviously he has family here. His reputation, character, and mental condition, I have no evidence about that. His criminal record or record of appearance in court, record of flight to avoid prosecution, other than statement of counsel I didn't hear much about that other than what she said she didn't know of any. The nature of the offense and the apparent probability of conviction and the likely sentence, well, he's admitted both of them. They're first degree murders. The potential is life or life without the possibility of parole or the death penalty, not in the case for which there is a bond set [2010-C-1912]. The prior criminal record, the grandmother testified that she didn't

know of much. The members in the community – so all that being said I do not think that $250,000 is an unreasonable bond in the case that's set. And I'm not going to set a bond in the other [case 2010-B-1227] because it's a potential death penalty case for which the proof is great.

The Appellant argued that these statements demonstrated the trial court had already reached the conclusion that the Appellant committed both murders. According to his argument, "[f]rom both a human perspective, as well as an objective one, there is no way a Court with even the best of intentions could be unbiased, or give the appearance of impartiality in a second trial."

As to the third alleged ground for recusal, the specific events the Appellant references are a series of outbursts he made after the jury returned its verdict in case 2010-C-1912. After the trial court excused the jury, the following exchange took place:

Defendant:   Man, fuck this courtroom. Fuck all y'all bitch-ass mother fuckers.

Court:   Mr. Wilson, sit down.

Defendant:   I'm dead anyway, bitch.

Court:   Mr. Wilson – wait a minute.

Defendant:   I don't give a fuck what y'all do.

Court:   Mr. Wilson, you have heard the verdict of this Court.

Defendant:   I don't give a fuck about none of that.

Court:   That verdict now becomes the judgement of the Court –

Defendant:   Fuck you and that pen and paper, bitch.

Court:   I'm finding you guilty of murder in the first degree in Count 1 and especially aggravated robbery.

Defendant:   You already knew what it was anyway.

Court:   All right. Mr. Wilson, we'll set this –

Defendant:     Fuck y'all.

The Appellant reacted similarly during the sentencing hearing after defense counsel argued in favor of concurrent sentencing:

Defendant:     Can I say something?  I ain't going to get loud or nothing this time.  I just want to say something.

Court:         He wants to – so he wants to make an allocution.  All right.  Mr. Wilson?

Defendant:     I just want to say something.

Court:         All right.  Go ahead.

Defendant:     Fuck that trial.  Fuck the next trial.  I'm cool, cool, cool.

Court:         Mr. Wilson, at least use proper language.

Defendant:     Forget this trial.  Forget the next trial.  I don't care how much time y'all give me.  Given me the death penalty.  I don't give a – really care.  I don't want dude (indicating) for my next trial.  That's really what I'm getting at.  I don't want dude for my next trial.

Court:         All right.  Well, Mr. Wilson –

Defendant:     So that's a conflict of interest, you can give me that right here.  I do know that.  Fuck the –

According to the Appellant' argument, the trial court will be unable to forget these aggressive outbursts when it has to make unbiased and impartial rulings during the death penalty trial in case 2010-B-1227.

*Trial Court's Ruling*

Citing *State v. Reid*, the trial court stated that the fact it presided over the Appellant's first trial was an insufficient reason, in and of itself, to warrant recusal in case 2010-B-1227.

213 S.W.3d 792, 815-16 (Tenn. 2006). The court observed that its knowledge of the facts of this case does require disqualification. *See id.*

As to the comments it made during the sentencing hearing in case 2010-C-1912, the trial court stated it was permitted to consider details of case 2010-B-1227, including the Appellant's statement to the police which discussed his involvement in these crimes, in determining whether consecutive sentencing was appropriate. The court noted:

> In applying the sentencing factor outlined in Tennessee Code Annotated section 40-35-114(1) (a defendant's history of prior convictions or criminal behavior), the sentencing court may find evidence of criminal behavior even where there is no conviction. *See State v. Massey*, 757 S.W.2d 350, 352 (Tenn. Crim. App. 1988). Additionally, when imposing sentence and determining the applicability of enhancement factors, a trial court may consider prior criminal behavior admitted by the defendant. *See State v. Gomez*, 239 S.W.3d 733, 742 (Tenn. 2007). Thus, the Court's mentioning the facts of this case during the sentencing hearing was proper in imposing the especially aggravated robbery sentence.
>
> The Court imposed consecutive sentences based upon the defendant's status as a dangerous offender. *See* Tenn. Code Ann. § 40-35-115[b](4) (2010). When a sentencing court imposes consecutive sentences based upon dangerous offender status, the Court must make specific, on-the-record findings that (1) the sentences are necessary to protect the public from additional misconduct by the defendant, and (2) the terms are reasonably related to the severity of the offenses. *See State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995).

Similarly, the trial court stated that its comments during the bond hearing were a necessary part of its on-the-record findings. The court observed that the relevant statute permitted it to consider the nature of the offense and the apparent probability of conviction and likely sentence. *See* Tenn. Code Ann. § 40-11-118(b)(6).

Finally, the trial court noted that the record reflects that it did not reciprocate any of the hostility expressed by the Appellant during the hearings, and it reasoned that "most reasonable people would anticipate that criminal court judges will encounter occasional outbursts from defendants and will address such actions appropriately without harboring any animosity toward the defendant." The court thus concluded that recusal is not warranted based upon the Appellant's conduct.

*Issue on Appeal*

As framed by the Appellant, the issue before this Court is whether the trial court's recusal in this capital murder case is necessary and appropriate in light of its previous factual findings that the Appellant committed the first degree murder with which he is charged in this case and to avoid to the appearance of impropriety created by those findings in conjunction with other events.

*Standard of Review*

As an initial matter, we address the standard by which this Court reviews petitions for recusal on appeal. Pursuant to Tennessee Supreme Court Rule 10B, Section 2.01, a party is entitled to an "accelerated interlocutory appeal as of right" from an order denying a motion for disqualification or recusal. As amended, effective July 1, 2012, Tennessee Supreme Court Rule 10B, Section 2.06, directs this Court to review the appeal "on an expedited basis based upon a *de novo* standard of review." Prior to that, the appellate courts reviewed recusal decisions pursuant to the more deferential abuse of discretion standard. *See State v. Hester*, 324 S.W.3d 1 (Tenn. 2010). The timing of the motion for recusal in this case requires this Court to review the matter under the new *de novo* standard.

If this Court determines, based on the Appellant's petition and supporting documents, that an answer from the State is unnecessary, the Court may act summarily on the appeal. Tenn. Sup. Ct. R. 10B, § 2.05. Otherwise, this Court may order an answer and may also order further briefing by the parties. In addition, Section 2.06 grants this Court the discretion to decide the appeal without oral argument. Having reviewed the petition and supporting documents, the Court has determined that an answer, additional briefing and oral argument are all unnecessary, and, therefore, the Court has elected to act summarily on the appeal in accordance with Sections 2.05 and 2.06.

*Statement of the Law*

"A judge should grant a motion to recuse when the judge has any doubt as to his or her ability to preside impartially in the case *or* when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (internal quotation omitted) (emphasis added). "Hence, the test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001).

A judge's duty to recuse springs from a constitutional source: Article VI, section 11 of the Tennessee Constitution provides that "[n]o Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested . . . ." The supreme court has explained that "[t]he purpose of Article 6, § 11 of our Constitution is to insure every litigant the cold neutrality of an impartial court." *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967). Similarly, the Code of Judicial Conduct requires a judge to perform the duties of his or her office without bias or prejudice. Tenn. Sup. Ct. R. 10, R2.3(A). Accordingly, the Code demands that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned" under the circumstances. *Id.*, R2.11(A). One such circumstance described by the Code is when "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." *Id.*, 2.11(A)(1).

This Court certainly acknowledges that not every bias, partiality, or prejudice merits recusal. *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). "To disqualify, prejudice must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case." *Id.* (internal quotation omitted). "If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge. . . . However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial." *Id.* (citations omitted). Further, "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias" and "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Id.* (citations omitted).

Finally, "[w]hen a trial court's comments indicate that the judge has prejudged factual issues, Tennessee courts have required disqualification." *Id.* at 822. "'In the trial of any lawsuit the judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial.'" *Id.* (quoting *Leighton,* 414 S.W.2d at 420). "'Beyond question it is not according to due course of law to compel a man over his protest to try his case before a judge who has already decided it, and has announced that decision in advance of the hearing. It is equally true that such a compulsion is a denial of justice.'" *Id*. (quoting *Leighton*, 414 S.W.2d at 421).

*Analysis*

The Appellant asserts on appeal that the trial judge in this case will be unable to remain fair and impartial due, in part, to the general nature of these two cases. The unpleasant facts of a case, however, or even an unruly defendant, are not grounds, in and of themselves, for the recusal of a judge. If this were true, it would be virtually impossible for

any trial judge to preside over a criminal case. The Appellant also attempts to equate a jury's potential inability to remain fair and impartial in the face of highly prejudicial or inflammatory evidence with a judge's duty to preside impartially over a trial. The two are simply not the same. Although the Appellant suggests it will be "impossible" for the trial court to hear the evidence in this case, having already heard the evidence in the previous case, without forming an opinion about the Appellant's guilt or innocence, that decision will ultimately be the jury's sole responsibility. The fact that the trial court presided over the Appellant's first case, which may share some similarities with the instant case and may even involve some of the same evidence, is not a basis for recusal. *See Reid*, 213 S.W.3d at 815. Indeed, the trial court's knowledge of the facts of a case does not require disqualification. *See id.* The Appellant has not shown a reasonable basis for questioning the trial court's impartiality based upon the fact that it presided over the Appellant's previous trial.

The main reason the Appellant argues the trial court should recuse itself, having already presided over the Appellant's first trial, is because of certain comments the court made in the previous case which, according to the Appellant, suggest it has already prejudged the Appellant's guilt in the instant case. The comments at issue are highlighted above. The specific piece of evidence which gives rise to the Appellant's concerns is his own statement to the police in which he apparently admitted his involvement in these crimes. That statement is not included in the material provided to this Court in the instant appeal. The trial court evidently, however, relied upon that statement during the bond hearing and when it sentenced the Appellant in the previous case. In denying the motion to recuse, the trial court stated that the comments it made in each hearing were a necessary part of its on-the-record findings. This Court agrees. The relevant statutes governing sentencing and pretrial release specifically authorize a trial court to consider, respectively, a defendant's history of criminal behavior and the probability of conviction and likely sentence. *See* Tenn. Code Ann. §§ 40-35-114(1); 40-35-115(b)(4); 40-11-118(b)(6).

The Appellant states, however, that he is not complaining about the procedure employed by the trial court during the sentencing and bond hearings. Rather, he contends the trial court's comments "crossed the line from simply presiding over previous litigation, and demonstrated a prejudgment of the ultimate issue in this case, and a partiality against [him] that require its recusal from this case." According to the Appellant, "recusal is warranted because the trial court's actions as a whole would create an appearance of impropriety in reasonable minds." This Court disagrees. The trial court's actions were completely in line with its responsibility during the sentencing and bond hearings.

As this Court has recognized, "[a]ny comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case."

*Alley*, 882 S.W.2d at 822. Accordingly, if the basis for the comments stems from what the trial court learned during trial, recusal is not required. *Id.* at 821. The trial court's reliance on the Appellant's statement to the police does not suggest it has prejudged the Appellant's guilt in this case because it was merely recounting what the Appellant apparently told the police.

Having reviewed the parts of the trial record included in the instant petition, and considering the Appellant's argument in light of the trial court's order, this Court does not believe a reasonable person would construe the trial court's comments, when viewed in the context they were made, as a prejudgment of the Appellant's guilt in this case. As the trial court recognized, the comments were limited to the specific tasks it was required to perform. They were not so pervasive that they will deny the Appellant a fair trial in this case. *Id.* at 821. Instead, the trial court's comments "were designed to expedite the litigation" in the previous case and they do not establish that it has formed an opinion in this case. *Reid*, 213 S.W.3d at 816.

The Appellant argues that recusal is also warranted because a person of ordinary prudence, knowing that the Appellant has already made extremely profane comments toward the trial court, would find a reasonable basis for at least questioning the trial court's impartiality toward the Appellant. Again, this Court disagrees. The trial court offered a well-reasoned explanation for declining to recuse itself on this ground: "most reasonable people would anticipate that criminal court judges will encounter occasional outbursts from defendants and will address such actions appropriately without harboring any animosity toward the defendant." The portions of the transcript of the hearings provided to this Court do not reveal any reciprocating hostility by the trial court toward the Appellant. Instead, the trial court acted with proper decorum, and there is absolutely nothing before this Court which demonstrates anything remotely indicative of a personal bias the trial court harbors toward the Appellant based upon his outbursts.

*Conclusion*

After a thorough de novo review of the petition and relevant authorities, and for the reasons stated herein, this Court concludes that the trial court properly denied the Appellant's motion to recuse. The ruling of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE