IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 6, 2017 Session

## COREY MITCHELL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 13-03935      James M. Lammey, Judge

_____

### No. W2016-01818-CCA-R3-PC

_____

Petitioner, Corey Mitchell, appeals from the denial of his petition for post-conviction relief. He raises two issues on appeal: (1) he was denied a full and fair hearing in the post-conviction proceedings, and (2) his guilty plea was not knowingly, voluntarily, and intelligently made due to the ineffective assistance of counsel rendered by his trial counsel. After review of the arguments of the parties and the entire record, we conclude that Petitioner is entitled to relief on his first issue. Accordingly, we reverse the judgment of the post-conviction court and remand this matter for a new hearing. Furthermore, the interests of justice require that under the circumstances of this case, and to insure the public perception of a fair and impartial hearing, the post-conviction proceedings must be heard by a different judge than the one who has previously heard the proceedings. In light of our conclusion and disposition of the first issue, issue two is pretermitted at this time.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Reversed and Remanded**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Kirk W. Stewart, Memphis, Tennessee, for the appellant, Corey Mitchell.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Gavin Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Procedural history*

On August 15, 2013, Petitioner was indicted by the Shelby County Grand Jury for the offenses of attempted first degree murder, aggravated assault, and employing a firearm during the commission of a felony. Petitioner pleaded guilty to attempted first degree murder and received a sentence of 15 years' confinement as a Range I offender. The remaining counts of the indictment were dismissed.

At the guilty plea hearing, the State gave the following factual basis for Petitioner's plea:

> [O]n February 2, 2013, at approximately 11 p.m., the victim Jeremiah Mays was at 2574 Malone here in Memphis, Shelby County when he was confronted by two male blacks. He didn't know them very well. He did, however, know they were in a rival gang.
>
> There had been some confrontation prior to this about [an] apparent allegation there may have been a [ ] shooting prior to this date. The males were upset with Mays because they felt he was flirting with their girlfriends. There was an argument that escalated when apparently [the] victim . . . may have pulled guns but according to [Petitioner's] co[-]defendant, it was actually Robert Lindiment [Petitioner's co-defendant] who actually fired his weapon several times at the victim, striking him twice in the leg. [Petitioner] apparently was the driver of the vehicle as it drove by.
>
> All events did occur in Memphis, Shelby County, Tennessee. [T]he victim did pick out both out of a photo lineup and say one was the driver [Petitioner] and also Robert Lindiment was the shooter in fact.
>
> Lindiment did in fact give a confession saying he was the shooter and that [Petitioner] did in fact drive the vehicle. And there were several Facebook pages taken where there was a photo on both Facebook pages with guns very similar to those described by the victim.

At the guilty plea hearing, Petitioner acknowledged that he signed the waiver of rights form. The trial court asked if trial counsel "went over" the form with Petitioner before he signed, and Petitioner responded that he had. The trial court asked Petitioner whether he understood that he had the right to a jury trial, the right to confront the State's

witnesses, the right to subpoena witnesses in his defense, the right against self-incrimination, the right not to testify, the right to testify if he so chose, the right to appeal, the right to an attorney on appeal, and the right to have an attorney appointed if he could not afford one. Petitioner stated that he understood those rights and that he wanted to waive those rights and accept the State's offer. The trial court asked if Petitioner was "doing this freely and voluntarily," and Petitioner responded that he was. The trial court asked Petitioner if he had any questions, and Petitioner responded that he did not.

The trial court accepted Petitioner's guilty plea and sentenced him as a Range I offender to 15 years to be served at 30 percent release eligibility. The trial court also noted:

> THE COURT:     Oh, there's one thing I noticed on here [trial counsel]. You marked workhouse. This is Tennessee Department of Correction[ ].
>
> [TRIAL COUNSEL]:     I understand that, Your Honor.
>
> THE COURT:     Does he think he's going to be serving this at the workhouse?
>
> [TRIAL COUNSEL]:     Well we've heard that if your term is at a certain low percentage, with some people they have been keeping them at the penal farm. But my understanding is it's at the Department of Correction[ ]?
>
> THE COURT:     Right. It's up to them but we have to mark this Tennessee Department of Correction[ ]. Now they have been keeping a log of people out there on long sentences but it's up to them. Do you understand that, [Petitioner]?
>
> [PETITIONER]:   Yes, sir.
>
> THE COURT:     Now they may keep you out there if they want to. It's up to them. Where they house you I have no control over, okay. The law says that I have to mark Tennessee Department of Correction[ ] on this judgment sheet, okay.
>
> [PETITIONER]:   Yes, sir.
>
> THE COURT:     With that in mind do you still wish to enter this guilty plea?

[PETITIONER]:    Yes, sir.

Petitioner filed a *pro se* petition for post-conviction relief, in which he alleged that he was denied the effective assistance of counsel and his guilty plea was unknowingly and involuntarily entered. Petitioner was appointed counsel, and an amended petition was filed, also alleging that Petitioner was denied the effective assistance of counsel and that his guilty plea was unknowingly and involuntarily entered.

***Post-conviction hearing***

Our holding in this appeal necessitates only a brief summary of Petitioner's testimony, in addition to quotations from the transcript of comments by the post-conviction court, Petitioner's post-conviction attorney, and the prosecutor at the post-conviction hearing.

Petitioner was the only witness who was permitted to testify at the post-conviction hearing. The transcript of the post-conviction hearing reflects the following at the outset of the proceeding:

> This cause came to be heard and was heard on the 16th day of August, 2016, before the Honorable James M. Lammey, Junior, Judge, holding the Criminal Court for Shelby County, at Memphis, Tennessee, and the following proceedings were had to-wit:
>
> THE COURT:    Okay. We we're going to bifurcate this hearing, this post[-]conviction?
>
> [PROSECUTOR]: Yes, Your Honor. For the record I spoke with Mr. Newport from the Public Defender's Office handling [trial counsel]'s matters. He informed me that he contacted [trial counsel] and he has no objection [to] bifurcating the hearing.
>
> THE COURT:    Okay. Good.
>
> [POST-CONVICTION COUNSEL]:    We have no objection either, Your Honor.

Petitioner testified at the post-conviction hearing that he was 17-years-old at the time of his arrest. He was 18-years-old when he entered his guilty plea. Petitioner testified that he was born and raised in South Memphis, and he completed eleventh grade.

- 4 -

He obtained his GED while incarcerated. He was raised by his father. He testified that he "was around [his mother] but not that much." He testified that the charges against him in this case were his "first brush with the law" in "adult or [c]riminal [c]ourt[,]" but that he had a record of misdemeanor offenses in juvenile court.

He testified that his trial counsel "never went over anything" with him and that he "never came and visit[ed] [him]." Petitioner testified that the only time he saw trial counsel was in court. Petitioner testified that he did not receive discovery materials until after he signed the plea agreement. Petitioner testified that trial counsel did not advise him of the maximum potential sentences for his charges. He testified that he did not understand the consequences of his plea "[b]ecause [trial counsel] never went over anything with [him]." He testified, "at the time, I know I was young and I ain't [sic] understand none of it, you know." Petitioner testified that trial counsel did not explain that he had the right to go to trial, the right to have witnesses subpoenaed, the right not to incriminate himself, the right to cross-examine the State's witnesses. He also testified that trial counsel did not explain to him the maximum possible punishment for the offenses.

Petitioner testified that he did not read the waiver of rights form. He testified, "I feel like it probably was right because he was, you know, my lawyer." Petitioner testified that he did not understand any of his rights.

Petitioner testified trial counsel told him, "you do four and a half years and then you get out." He testified that trial counsel told him to "[j]ust say yes to everything" that the trial judge asked him at the guilty plea hearing. Petitioner testified that it was his desire to go to trial on the charges against him, despite that he might receive a greater sentence if convicted.

On cross-examination, Petitioner acknowledged that he paid attention to the trial court's questions and answered "no" to the trial court's question of whether he had ever entered a guilty plea before. He testified that he "just did what [his] lawyer told [him] to do." Petitioner testified, "if [trial counsel] would have helped me, went over and visit[ed] me more and, you know, I think I probably could have got[ten] a better deal, like, you know."

After Petitioner's post-conviction attorney and the prosecutor had completed all direct examination, cross-examination and redirect and recross examinations, the following exchange between Petitioner and the post-conviction court occurred.

THE COURT:  [Petitioner], you actually had two lawyers on this from the Public Defender's Office, did you not?

THE PETITIONER: Yes, sir.

THE COURT: Who was your first one?

THE PETITIONER: I know her last name was Mitchell.

THE COURT: Jennifer Mitchell. She was a public defender in here and then [trial counsel] came in and took over the case from her[,] correct?

THE PETITIONER: Yes, sir.

THE COURT: All right. So you're saying that no – neither one of these two lawyers explained anything to you anything about this plea?

THE PETITIONER: No, sir. I only see Ms. Mitchell, like, two times. Every time I seen her, the court date was getting set off.

THE COURT: I see. So but she filed all sorts of motions on this a month after she was on the case according to the record. She filed all these motions on November 13, 2013. You entered a guilty plea on April 7th of [20]14 so it was about five months before she filed all these motions. State, does your file indicate when discovery was provided to her?

[PROSECUTOR]: It does, Your Honor. I just checked it. Discovery was e-mailed to both codefendants' attorneys November 12, 2013.

THE COURT: November 12, 2013. So now you're saying you couldn't understand – you couldn't really read that well; is that right?

THE PETITIONER: Yes, sir.

THE COURT: So what good would it have done you to have a copy of the discovery because you wouldn't have understood what was in it?

THE PETITIONER: I just wanted my discovery.

THE COURT:     Okay.  So you're telling me now[,] [the prosecutor] asked you if you understood what aggravated perjury is.  Well you said you don't know.

THE PETITIONER:     No, sir.

THE COURT:     I'm telling you it carries two to 12 [sic] years in jail, okay.  You only have one prior crime so you would be a range one offender.  It would be two to four years, two to four years on top of this.  Do you know what two years or four years will do to your parole date?

THE PETITIONER:     No, sir.

THE COURT:     No, you don't.  Well you're about to find out.  Because if you're convicted of aggravated perjury and it's on top of this, you might have to flatten every minute of this 15 years before you get to get parole.  That would be totally up to the guys at the parole office if they want to give you parole because I think you're not telling me the truth today.

So here's the question.  You better think hard because if they put on Ms. Mitchell or they put on [trial counsel], they come in here and say I gave him a copy of his discovery, a lot of times they'll do it on the record.  We might have a record of having it and it might have happened in court.  But you need to remember because if you tell me a lie today, those guys over there are going to indict you for aggravated perjury.

And it's one thing to be an attempted murderer.  It's another thing to be a convicted liar on top of being an attempted murderer, okay.

THE PETITIONER:     Yes, sir.

THE COURT:     And you'll go before the parole board and they'll say huh, he was just convicted of aggravated perjury.  Is this the kind of guy we want to give parole to?  I don't know.  They might.  They might not.  I can't make any promises, just like I don't know where you were – where are you being housed?

THE PETITIONER:     Northeast Correctional Center.

THE COURT:     So you're actually in prison?

- 7 -

THE PETITIONER:        Yes, sir.

THE COURT:      Okay.  Well then so I don't know what's going to happen.  They might indict you.  So here's the question.  Did you receive discovery from either Ms. Mitchell or [trial counsel]?

THE PETITIONER:        [Trial counsel], I got mine's the same day I signed for my time.  Ms. Mitchell, she never gave me any discovery packet.

**THE COURT:    I see.  Now back to the guilty plea, I went over everything with your codefendant . . . first; right?**

**THE PETITIONER:    Yes, sir.**

**THE COURT:    And I asked you if you heard everything I went over with him and you said you did.  Now did you hear what I went over with him or not?**

**THE PETITIONER:    I wasn't really paying attention but I heard it.**

**THE COURT:    Okay.  Sir, you can step down.  You can step down.  I've heard enough.  There's no need to call [trial counsel].  [Petitioner] is not telling the truth today.  I don't believe a single word he has to say.**

I gave him his rights.  I went over his rights, went over his codefendant's rights first.  He said he had no questions.  He said he understood.  I even told him I couldn't promise where he would be housed.  With that in mind do you still wish to enter this plea, even though he said it was promised by [trial counsel] that he [would] serve it at the penal farm.

So we went all over that.  And I was satisfied then that he was giving it freely and voluntarily.  Now he wants to tell me that he was lying to me.  So he didn't really understand so that means he lied to me then.  That's aggravated perjury right there.

**You lied. You're lying to me today. And so there's no need to call [trial counsel] to testify to that because I'm certain of it. I don't believe a single word you have to say.**

So therefore, this petition for post-conviction relief is denied. He gave this guilty plea freely and voluntarily. **He was given a gift from God. He should have got[ten] 25 plus six. He should have gotten 31 years in jail. And if I had the power to, if I wanted to, if I was – if I could, I would set this aside just so we could go to trial on this so you could get 31 years. You lied to me today and I'm not going to take it. You can step out. Denied.**

      [POST-CONVICTION COUNSEL]:    Thank you, Your Honor.

(Emphasis added).

After the ruling from the bench, the post-conviction court entered a brief order denying relief. The entire content of the order is as follows:

> This cause came to be heard on the 16th day of August, 2016, on the *pro se* Petition for Post-Conviction Relief, and the record as a whole. An evidentiary hearing was heard on August 16, 2016. After hearing the Petitioner's evidence, the Court denied the petition for post-conviction relief and elected to make his findings of fact and conclusions of law orally. A transcript of the hearing and oral ruling as prepared by the court reporter is incorporated by reference in this order as stating, in detail, the Court's findings of fact and conclusions of law denying said petition.

### CONCLUSION

> In summary, the Petitioner has failed to prove ineffective assistance of counsel. More specifically, he has failed to carry his burden of proof as to either deficient performance or prejudice. Furthermore, the court finds that petitioner was less than candid with the court and may have committed aggravated perjury. Petitioner's testimony was simply incredulous.

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Petition for Post-Conviction Relief is hereby denied.

- 9 -

*Analysis*

Petitioner argues in his first issue that he was denied his right to a full and fair hearing because "he was not allowed to examine the attorney from whom he received ineffective assistance of counsel." The State strenuously argues that on the face of the record Petitioner received a full and fair hearing. We agree with Petitioner.

The State agrees that Petitioner is entitled to an evidentiary hearing on his petition for post-conviction relief. *See* T.C.A. § 40-30-109. It is Petitioner's burden to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f). Thus, it is abundantly clear that a petitioner is entitled to a full and fair hearing in order to meet this burden. The Supreme Court has held that the opportunity to be heard "at a meaningful time and in a meaningful manner" is a requirement of due process accorded to litigants. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The State acknowledges that the Tennessee Supreme Court has held that the requirement of a "full and fair hearing" is satisfied when "a petitioner is given the opportunity to present proof and argument on the petition for post-conviction relief." *House v. State*, 911 S.W.2d 705, 714 (Tenn. 1995).

The State, however, mistakenly concludes that a hearing in which the post-conviction court unilaterally halts the proceedings by prohibiting any other witness's testimony and immediately concludes the evidentiary hearing by making a final ruling constitutes a "full and fair hearing."

In the case *sub judice*, Petitioner had not rested his case. The State asserts that Petitioner neither objected to the sudden denial of the second portion of an agreed bifurcated hearing, nor asked for a continuance "*after* the court ruled from the bench." (Emphasis added). The State cites no authority for the proposition that a petitioner must move for a continuance or object to the denial of an agreed second hearing after the post-conviction court makes a sudden, unexpected, and procedurally unorthodox final ruling. As such, the State's argument is waived.

Without citing to anything in the appellate record other than the exchange about the agreement to bifurcate the hearing, quoted above, the State says "[t]he record reflects that trial counsel was the State's witness, not [Petitioner's]." The State also cites a sentence in Petitioner's initial brief that he should have been allowed to "*cross*-examine" trial counsel. (Emphasis added). The State asserts that this is corroboration that trial counsel was only a witness for the State, and not for Petitioner. In his reply brief, Petitioner admits the use of the term "cross" was "inartfully" used. What the State neglected to point out is the very first sentence in the argument section of Petitioner's initial brief: "[Petitioner] first asserts that he was denied a full and fair hearing because he

was not allowed to examine the attorney from whom he received ineffective assistance of counsel."

The post-conviction court abused its discretion by dismissing the petition for post-conviction relief on the merits: (1) before either side had rested its case; (2) without giving both sides opportunity to direct and/or cross-examine Petitioner after the post-conviction court questioned Petitioner; and (3) without allowing Petitioner the opportunity to object to the ruling that trial counsel would not be permitted to testify before making its final ruling on the petition.

Petitioner was denied a full and fair hearing. He is therefore entitled to have the post-conviction court's judgment reversed and to have the matter remanded for a new evidentiary hearing. We emphasize that on remand, the post-conviction court is ordered to allow the parties to present the testimony of all witnesses they desire to call, subject only to the provisions of law that might limit testimony of a witness. However, the post-conviction court is not to limit the witnesses called to Petitioner and trial counsel solely because they were the only witnesses contemplated by the parties at the first hearing. In other words, Petitioner is entitled to a fresh start as if there has not yet been an evidentiary hearing.

We also conclude that the post-conviction court judge who previously heard this matter must be recused from hearing further proceedings in this case. We do not take this action lightly.

In order to maintain the people's confidence in the judicial branch of the people's government, all cases *must* be tried by unbiased and unprejudiced judges. *Smith v. State*, 357 S.W.3d 322, 340 (Tenn. 2011) (citing *State v. Rimmer*, 250 S.W.3d 12, 37 (Tenn. 2008)). "[T]he preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be *perceived* to be impartial." *State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). A judge should be recused whenever "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). The test is an objective one because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001). While bias based only upon the judge's observance of a witness at a trial does not require recusal, if the bias "is so pervasive that it is sufficient to deny the litigant a fair trial," the bias need not be extrajudicial. *Alley*, 882 S.W.2d at 821. "When a trial court's comments indicate that the judge has prejudged factual issues, Tennessee courts have required disqualification." *Id*. at 822 (citing *Leighton v. Henderson*, 220 Tenn. 91, 414

- 11 -

S.W.2d 419, 420 (Tenn. 1967)). When a remand for the trial judge to evaluate the potential appearance of impropriety would be inefficient, then the appellate court can proceed to order recusal to avoid the public appearance of impartiality. *Alley*, 882 S.W.2d at 823.

From the transcript, quoted above, it is evident that under the cases cited, the post-conviction judge who initially heard this case should be recused upon remand for the new evidentiary hearing. The judge pre-determined what the testimony of trial counsel would be, and that it would contradict in all material aspects Petitioner's testimony. While it may well be that in the vast majority of post-conviction cases trial counsel will contradict a petitioner's testimony alleging ineffective assistance of counsel and/or the legal validity of a guilty plea, this *cannot* be presumed without testimony from a trial counsel who is able to attend and testify.

The post-conviction judge emphatically stated on the record that Petitioner was guilty of aggravated perjury, and even implicitly encouraged the State to seek an indictment (saying to Petitioner, "But you need to remember because if you tell me a lie today, those guys over there are going to indict you for aggravated perjury.").

Finally, an objectively reasonable person could easily conclude that the post-conviction judge was being vindictive toward Petitioner by terminating the hearing and thus denying Petitioner a full and fair hearing by stating the following in his ruling from the bench:

> So therefore, this petition for post-conviction relief is denied. He gave this guilty plea freely and voluntarily. *He was given a gift from God. He should have got 25 plus six. He should have gotten 31 years in jail. And if I had the power to, if I wanted to, if I was – if I could, I would set this aside just so we could go to trial on this and so you could get 31 years.* You lied to me today and I'm not going to take it. You can step out. Denied.

(Emphasis added).

We do not question the post-conviction judge's subjective intentions. We only conclude that from an objective view, the post-conviction judge must be recused from this case upon remand because the judicial system mandates that the judge must be perceived to be impartial.

CONCLUSION

The judgment of the post-conviction court is reversed and this case is remanded for a new evidentiary hearing. Upon remand, the post-conviction judge who presided over the first hearing is recused, and another judge shall preside.

_____
THOMAS T. WOODALL, PRESIDING JUDGE